1  Linda F. Cantor (CA Bar No. 153762)
   PACHULSKI STANG ZIEHL & JONES LLP
2  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California 90067-4100
3  Telephone: 310-277-6910
   Facsimile: 310-201-0760
4  Email: lcantor@pszjlaw.com

5  Counsel for Weneta Kosmala, Chapter 7 Trustee for
   The Tulving Company, Inc.

6

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    SANTA ANA DIVISION

   In re:
11                                              Case No.: 8:14-bk-11492-ES

12  THE TULVING COMPANY, INC., a                Chapter 7
    California corporation,
13                                              NOTICE OF MOTION AND MOTION
                           Debtor.              FOR ORDER (I) APPROVING COIN
14                                              VALUATIONS AND DISTRIBUTION
                                                SCHEDULE OF ERROR COINS TO
15                                              VICTIM/ CREDITORS, AND (II)
                                                GRANTING RELATED RELIEF
16                                              PURSUANT TO SECTIONS 105 AND 363
                                                OF THE BANKRUPTCY CODE;
17                                              MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT THEREOF;
18                                              DECLARATIONS OF WENETA M.A.
                                                KOSMALA AND DAVID JUDD IN
19                                              SUPPORT THEREOF

20                                              Hearing:
                                                Date:      July 13, 2017
21                                              Time:      10:30 a.m.
                                                Place:     411 West Fourth Street
22                                                         Courtroom 5A
                                                           Santa Ana, CA 92701
23

24  TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE, THE

25  OFFICE OF THE UNITED STATES TRUSTEE, ALL CREDITORS, PARTIES THAT

26  HAVE FILED REQUESTS FOR SPECIAL NOTICE, AND OTHER INTERESTED

27  PARTIES:

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that on **July 13, 2017, at 10:30 a.m.**, or as soon thereafter as counsel may be heard, a hearing will be held (the "Hearing") upon the motion ("Motion") of Weneta M.A. Kosmala, the duly appointed chapter 7 trustee (the "Trustee") for The Tulving Company, Inc. (the "Debtor"), in the above-entitled chapter 7 case (the "Bankruptcy Case"), pursuant to sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), seeking: (1) approval of the valuations of certain coins, consisting of 13,850 Presidential Error-Missing Edge Letter Coins and 1,730 Double Edge Coins (collectively, the "Error Coins") determined by Professional Coin Grading Service ("PCGS"), in the amounts listed on **Exhibit "A"** hereto; (2) approval of the Trustee's proposed allocation of specific Error Coins to each of the creditors of this estate who are victims of the Debtor's fraud (the "Victim/Creditors") on account of their claims, as set forth on the distribution schedule (the "Distribution Schedule") attached hereto as **Exhibit "B"**; (3) establishing **July 3, 2017** as the new deadline (the "Opt-Out Deadline") for Victim/Creditors to determine whether or not to accept the Error Coins as a distribution from the Estate on account of their claims; (4) determining that any Victim/Creditors who have not sent back an "Opt-Out Notice" (in the form appended hereto as **Exhibit "C"**) by the Opt-Out Deadline are by default deemed by the Court to have "opted-in" to receive Error Coins in accordance with the Distribution Schedule; (5) determining that the distribution of Error Coins to Victim/Creditors be treated as a distribution of cash to such creditors, of an amount equal to the value of their allocated Error Coins in accordance with the valuations listed on **Exhibit "A"** hereto; (6) approving payment to Great Collections of its shipment costs in accordance with the *Order Authorizing the Trustee to (I) Retain GreatCollections.com d/b/a Great Collections as Auctioneer, (II) Modify, in Part, Asset Distribution Plan, and (III) Set New Opt-Out Deadline for Creditors to Determine Whether to Receive Error Coins in Partial Payment of Their Claims and Sell Coins Not Distributed to Creditors Free and Clear of Liens, Claims and Interests* entered October 12, 2016 [Docket 634] (the "Distribution Modification Order") [1]; and (7) granting related relief.

---

[1] The Distribution Modification Order approved the setting of a new opt-out deadline which will be 30-days after the filing of this Motion, and authorized the retention of Great Collections to value, ship and auction Error Coins on the terms set forth therein. This Motion seeks approval of the Distribution Schedule, the opt-in / opt-out procedure to be implemented in accordance with the Distribution Modification Order and the payment of shipping costs in accordance with the terms of Great Collection's retention by the Estate.

1       **PLEASE TAKE FURTHER NOTICE** that to address confidentiality concerns, the names

2   of Victim/Creditors are not set forth on the Distribution Schedule appended to the Motion, which

3   lists claims numerically by dollar amount only. Pursuant to Order of the Court[2], the Trustee

4   obtained authorization to file pleadings containing customer information under seal. Therefore, the

5   full Distribution Schedule (and any supplements and amendments thereto) listing each

6   Victim/Creditor, their address, their claim amount and the specific Error Coin(s) proposed to be

7   delivered to such Victim/Creditor is being filed with the Court under seal. After the Opt-Out

8   Deadline and prior to the hearing on the Motion, the Trustee will file under seal a supplemental

9   Distribution Schedule identifying the Victim/Creditors who have made a timely determination to

10  opt-out. After the hearing on the Motion, the Trustee will file under seal a final Distribution

11  Schedule identifying any additions or revisions to the supplemental Distribution Schedule either

12  authorized by the Trustee, in her discretion, or as may be ordered by the Court at the hearing on the

13  Motion.

14      **PLEASE TAKE FURTHER NOTICE** that the Trustee's professionals have prepared a

15  separate personalized distribution schedule for each individual Victim/Creditor that specifically lists

16  the Error Coin(s) to be distributed to such Victim/Creditor (each, an "Individual Error Coin Notice").

17  At the bottom of the Individual Error Coin Notice is the "Opt-Out Notice", to be filled out by

18  Victim/Creditors indicating (i) whether they wish to receive their allocated Error Coins, and (ii) any

19  change of address information. The Trustee will serve a copy of this Notice of Motion and Motion,

20  and an Individual Error Coin Notice (containing the Opt-Out Notice) to each Victim/Creditor. To

21  facilitate the return of the Opt-Out Notices prior to the Opt-Out Deadline, the Trustee will also

22  enclose a stamped self-addressed return envelope for the mailing by Victim/Creditors of the Opt-Out

23  Notices to the Trustee's professionals. Other parties in interest will receive a copy of this notice of

24  Motion and Motion only.

25      **PLEASE TAKE FURTHER NOTICE** that the form of Distribution Schedule filed with the

26  Court and appearing on the Court docket lists each specific Error Coin to be distributed to each

27  individual Victim/Creditor (without personally identifying information). The Distribution Schedule

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] *See Order Authorizing Trustee to File Customer Lists Under Seal* [Dkt. No. 169] entered September 12, 2014.

1   is 378 pages long.  In the interests of economy, a summary form of Distribution Schedule (11 pages

2   long) is being served upon creditors and parties in interest along with the Motion.  Any creditor or

3   party in interest may view the full Distribution Schedule (redacted of personally identifiable

4   information) on the Court's Docket or on the informational website maintained by the Trustee at

5   tulvingbankruptcy.com.  In addition, copies of the full Distribution Schedule (without personally

6   identifying information) can be obtained by contacting the office of counsel for the Trustee, whose

7   contact information is on the first page of this notice.

8       **PLEASE TAKE FURTHER NOTICE** that the relief sought herein is in furtherance of,

9   *inter alia*: (1) the *Coordination Agreement for Distribution of Seized Items from United States to*

10  *Bankruptcy Trustee and from Trustee to Victims* (the "Coordination Agreement") by and among the

11  Trustee, the Debtor, Hannes Tulving, Jr. and the Government, which was approved by Order of this

12  Court dated July 22, 2015 [Docket No. 264] (the "Coordination Order"); (2) the *Order (I)*

13  *Authorizing Implementation of Trustee's Proposed Plan for Liquidation of Seized Items and*

14  *Disbursement of Assets to Victim/Creditors of Fraud in the Bankruptcy Case in Accordance with*

15  *Coordination Agreement with United States Government, and (II) Granting Related Relief Pursuant*

16  *to Sections 105 and 363 of the Bankruptcy Code* [Docket No. 494] entered January 28, 2016 (the

17  "Distribution Order"); and (3) the Distribution Modification Order, as described more fully in the

18  Memorandum below.

19      **PLEASE TAKE FURTHER NOTICE that, pursuant to the Distribution Modification**

20  **Order previously entered by this Court, if you determine to "opt out" and not receive the**

21  **Error Coin distribution described on the Distribution Schedule and set forth on the Individual**

22  **Error Coin Notice, you must return the enclosed Opt-Out Notice, in the manner stated in the**

23  **Opt-Out Notice, so that it is received no later than July 3, 2017, the Opt-Out Deadline. If you**

24  **do not timely return the Opt-Out Notice, the Trustee will seek a determination that you have**

25  **affirmatively "opted-in" to receive the Error Coins allocated to you.**

26      **PLEASE TAKE FURTHER NOTICE that if you choose to opt out of receiving Error**

27  **Coins, the Trustee will sell the Error Coins that were otherwise distributable to you through**

28  **an auction.  The auction proceeds will be used to pay claims and expenses of this bankruptcy**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   case in accordance with the priorities established by the Bankruptcy Code. **Therefore, if you**

2   **"opt-out" of receiving Error Coins, it is very possible that you will receive no distribution from**

3   **the Debtor's Estate on account of your claim(s).**

4       **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion,

5   the accompanying Memorandum of Points and Authorities, the Declarations of Weneta M.A.

6   Kosmala and David Judd that are attached to the Motion, and any other admissible evidence properly

7   brought before the Court.

8       **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) requires that

9   any response to the Motion be filed with the Bankruptcy Court and served upon Trustee's counsel at

10  the address appearing on the upper-left hand corner of the caption page to this Motion and the Office

11  of the U.S. Trustee no later than fourteen (14) days prior to the Hearing hereon.  The response must

12  be a complete written statement of all reasons in opposition to or in support of the Motion and

13  include declarations, documents and any responding memorandum of points and authorities.

14  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition

15  may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

16      **WHEREFORE**, The Trustee respectfully requests that the Court approve the Motion and

17  grant such other relief as is just and proper under the circumstances.

18  Dated:    June 1, 2017              PACHULSKI STANG ZIEHL & JONES LLP

19

20                          By    */s/ Linda F. Cantor*
                                 Linda F. Cantor
21
                                 Counsel for Weneta Kosmala, Chapter 7
22                               Trustee

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Table of Contents

I. STATEMENT OF FACTS .................................................................................................... 6

    A.   The Background of the Debtor's Business ...................................................... 6

    B.   Procedural Background of the Bankruptcy Case ........................................... 6

    C.   The Criminal Case ........................................................................................ 7

    D.   The Disposition Plan ..................................................................................... 7

    E.   The Distribution Modification Order ............................................................ 8

    F.   Grading of the Error Coins and Proposed Distribution Schedule. ................ 10

II. THE ERROR COIN VALUATIONS, DISTRIBUTION SCHEDULE AND OPT-OUT
PROCEDURES SHOULD BE APPROVED BY THE COURT ...................................... 10

    A.   Approval of Valuation and Assignment of Cash Values ............................... 11

    B.   Approval of Distribution Schedule ............................................................... 12

    C.   Opt Out Procedures ...................................................................................... 12

    D.   Distribution by Great Collections ................................................................ 13

III. CONCLUSION .............................................................................................................. 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    The Background of the Debtor's Business

The Tulving Company, Inc. ("Debtor") is a California corporation.  The Debtor was in the business of selling and purchasing gold, silver, coins and other precious metals through its internet website or by phone.  Prior to the filing of the bankruptcy, customer complaints concerning delayed or undelivered orders were increasingly made to the Better Business Bureau against the Debtor and in early March, 2014, a class-action lawsuit was filed against the Debtor and Hannes Tulving, Jr., the Debtor's sole shareholder and principal ("Hannes Tulving") in the United States District Court, Northern District of California.  A criminal investigation of the Debtor and Tulving by the Government was also being pursued, as described below.  The Debtor ceased operations on or about March 3, 2014.

### B.    Procedural Background of the Bankruptcy Case

The Debtor commenced this case (the "Bankruptcy Case") by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 10, 2014.  In light of the pending criminal investigation and other ongoing litigation against the Debtor, on March 18, 2014, the United States Trustee filed a *Stipulation Appointing Chapter 11 Trustee* [Docket No. 15] (the "Stipulation"), which was signed by both the Debtor and its attorney.  The Stipulation was approved by the Bankruptcy Court on March 18, 2014 [Docket No. 16] and an Order was entered by the Court on March 21, 2014 approving the *U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee, appointing R. Todd Neilson as Trustee of the Debtor's estate* [Docket No. 22].  Thereafter upon notice and hearing, the case was converted to a chapter 7 and R. Todd Neilson was appointed to serve as the chapter 7 Trustee [Docket 108].  On March 22, 2016, Mr. Neilson filed his Withdrawal of Trustee [Docket 564].  The UST filed its *Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as Trustee* dated April 1, 2016 [Docket 566], appointing Weneta M. A. Kosmala as the successor chapter 7 trustee of the Debtor's estate.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

C.    **The Criminal Case**

On March 8, 2014, Special Agents of the United States Secret Service executed a Search Warrant on the Debtor's offices on probable cause that the Debtor and Hannes Tulving were engaged in fraud. The Search Warrant resulted in the seizure of the Debtor's property including rare coins and other valuable items. Criminal proceedings (the "Criminal Case") against the Debtor and Hannes Tulving (collectively, "Defendants") ensued before the United States District Court for the Western District of North Carolina (the "District Court").

Hannes Tulving entered into a Plea Agreement with the United States of America, by and through the Acting United States Attorney for the Western District of North Carolina (the "Government") in the Criminal Case. Pursuant to order of this Court entered July 22, 2015 [Docket No. 264] (the "Coordination Order"), Hannes Tulving was authorized to sign the Plea Agreement on behalf of the Debtor in the Criminal Case. Under the Plea Agreement, the Defendants each plead guilty to 18 U.S.C. § 1343 wire fraud charge as set forth in Count One of a Bill of Information in the Criminal Case and, among other things, agreed to pay restitution to the victims of fraud. The Coordination Order authorized Hannes Tulving to sign on behalf of the Debtor a *"Coordination Agreement for Disbursement of Seized Items from United States to Bankruptcy Trustee and from Trustee to Victims"* (the "Coordination Agreement"). The Coordination Agreement also provided a framework for the administration by the Bankruptcy estate of the coins that had been seized by the Government. It required that the Trustee make a proposal for the disposition of the seized assets to Victim/Creditors which was acceptable to the Government and approved by the Bankruptcy Court and the District Court in the Criminal Case.

D.    **The Disposition Plan**

As required by the Coordination Agreement, the Trustee made a proposal (the "Disposition Plan") for the disposition of the approximately 189,000 valuable coins (collectively, the "Seized Coins") that had been seized from the Debtor by the Government. The Disposition Plan was based upon the Debtor's inventory and valuation of the Seized Coins. Under the Disposition Plan, approximately 176,477 of the Seized Coins (the "Non-Error Coins"), believed to have a liquidation value in the range of $400,000 - $500,000, were to be sold at auction. Other Seized Coins,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  consisting of approximately 12,539 Presidential Error-Missing Edge Letter Coins, had been ascribed

2  a value of $7,367,235 by the Debtor's coin expert, Miles Standish.  However, the Trustee was

3  advised that an immediate sale of such a large number of Presidential Error-Missing Edge Letter

4  Coins and other Double Edge Coins (collectively, the "Error Coins") would flood the market and

5  greatly reduce their value.  The Disposition Plan therefore provided for the Error Coins to be

6  distributed directly to Victim/Creditors on a pro rata basis, in partial satisfaction of their claims.

7  Any Victim/Creditors could decide to "opt-out" of receiving Error Coins and the coins otherwise

8  distributable to them (the "Rejected Coins") would be sold at a later auction.

9      The Disposition Plan was accepted by the Government, approved by Order of the Bankruptcy

10  Court dated January 28, 2016 [Dkt. No. 494][1] and approved by the District Court.  Thereafter,

11  Victim/Creditors were provided an opportunity to opt-out of receiving their allocated share of Error

12  Coins.  Thirty (30) of the Victim/Creditors advised the Trustee's professionals of their determination

13  to opt-out of receiving Error Coins.

14      Thereafter, in accordance with the Disposition Plan and orders of the bankruptcy court, the

15  Seized Coins were transferred from the federal depository in Wilmington, Delaware, to Heritage

16  Auctioneers ("Heritage") in Dallas, Texas, and the Non-Error Coins were sold at auction on June 10,

17  2016.  Consistent with estimates; the net proceeds of sale of the Non-Error Coins amounted to

18  $385,314.[2]  (These amounts will be distributed pursuant to the priorities established by the

19  Bankruptcy Code and in accordance with the Disposition Plan.)  However, it was the opinion of

20  Heritage that the Error Coins released by the Government and in its possession had an aggregate

21  value of approximately $500,000, and not $7,367,235, as reported by the Debtor's coin expert.

22  **E.**    **The Distribution Modification Order**

23      The Trustee was unable to substantiate the vastly discrepant values allocated to the Error

24  Coins by the Debtor's coin expert, Miles Standish, and by Heritage.  (While Mr. Standish

25  purportedly graded 12,539 Presidential Error-Missing Edge Letter Coins, only 2,800 of those coins

26

27  [1] *Order (I) Authorizing Implementation of Trustee's Proposed Plan for Liquidation of Seized Items and Disbursement of Assets to Victim/Creditors of Fraud in the Bankruptcy Case in Accordance with Coordination Agreement with United States Government, and (II) Granting Relief Pursuant to Sections 105 and 363 of the Bankruptcy Code* [Dkt. No. 494] entered January 28, 2106

28  [2] *See* Submission of Report of Auctioneer and Auction Expenses [Dkt. No. 600].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   were separately marked; the remaining coins were comingled after their review so that their

2   individual values could not be determined.  Mr. Standish refused to re-value the Error Coins.

3   Heritage proposed to grade and value the Error Coins but at a price of $250,000, which was cost

4   prohibitive.)  Without individual values for the coins, there was no mechanism for the Trustee to

5   prepare a ratable allocation of the Error Coins on account of individual Victim/Creditor claims.

6   Under the circumstances, the Disposition Plan with respect to the distribution of Error Coins being

7   held by Heritage could not be implemented.

8            After conferring with other coin experts, the Trustee determined to engage

9   GreatCollections.com d/b/a Great Collections ("Great Collections") to have the Error Coins

10  individually graded and encapsulated through Professional Coin Grading Service ("PCGS"), a

11  national coin grading service utilized by Great Collections in the ordinary course of business.  In

12  addition to the provision of grading services by PCGS at a discounted rate, Great Collections also

13  agreed to transport the Error Coins from Dallas, Texas to Irvine, California, inventory the coins and

14  ship the graded coins to Victim/Creditors at a total cost between $110,250 and $120,250, and auction

15  coins not otherwise distributed.

16           The Trustee filed a motion on September 1, 2016, requesting authority to (a) retain Great

17  Collections to provide the grading, shipping and auction services, (b) modify the Disposition Plan to

18  the extent it attributed a $7.367 million value to the Error Coins, (c) authorize the Trustee to set a

19  new "Opt-Out" deadline after the filing of a distribution schedule based on the graded values of the

20  Error Coins, and (d) sell by auction coins not distributed by the Trustee, free and clear of all liens,

21  claims and interests (collectively, "Interests").[3]  The Trustee's motion was approved by Order of the

22  Court dated October 12, 2016.[4]

23

24  [3] Notice Of Motion And Motion For Order Authorizing The Trustee To (I) Retain GreatCollections.Com  d/b/a Great
    Collections As Auctioneer, (II) Modify, In Part, Asset Distribution Plan, And (III) Set New Opt-Out Deadline For
25  Creditors To Determine Whether To Receive Error Coins In Partial Payment Of Their Claims And Sell Coins Not
    Distributed To Creditors Free And Clear Of Liens, Claims And Interests; Memorandum Of Points And Authorities In
26  Support Thereof; Declarations Of Weneta M.A. Kosmala And Ian Russell [Dkt. No. 623] (the "Distribution Modification
    Motion").
27  [4] See Order Authorizing the Trustee to (I) Retain GreatCollections.com  d/b/a Great Collections as Auctioneer, (II)
    Modify, in Part, Asset Distribution Plan, and (III) Set New Opt-Out Deadline for Creditors to Determine Whether to
28  Receive Error Coins in Partial Payment of Their Claims and Sell Coins Not Distributed to Creditors Free and Clear of
    Liens, Claims and Interests entered October 12, 2016 [Docket 634] (the "Distribution Modification Order").

**F.**      **Grading of the Error Coins and Proposed Distribution Schedule.**

On or about April 24, 2017, PCGS completed its grading of the Error Coins and based upon the grades assigned, the Error Coins were ascribed values.  PCGS graded 12,761 Presidential Error-Missing Edge Letter Coins and received 2,719 previously graded Error Coins.  Great Collections also received from Heritage 658 presidential coins that are not considered Error Coins.  In total, Great Collections is holding 16,238 coins, including 15,580 Error Coins which are now graded and encapsulated.

As set forth on **Exhibit "C"** hereto, the graded value of the 15,580 Error Coins is $2,955,113.  While this amount is approximately 40% of the value ascribed to the Error Coins by the Debtor's coin expert, it is almost six times the value estimated by Heritage.  Based on the value of the Error Coins, and as set forth on the Distribution Schedule prepared by the Trustee's professionals, Victim/Creditors who determine to "opt-in" and receive Error Coins from the Estate will receive coins valued at between 18.73% and 18.77% of the amount of their claims.

By the Motion, the Trustee requests that the Court approve the PCGS valuation of the Error Coins.

## II.

## THE ERROR COIN VALUATIONS, DISTRIBUTION SCHEDULE AND OPT-OUT PROCEDURES SHOULD BE APPROVED BY THE COURT

The Disposition Order, entered January 28, 2106, authorized the Trustee to implement the Disposition Plan, providing for the sale of the Non-Error Coins and the distribution of Error Coins directly to Victim/Creditors on a pro rata basis utilizing the Debtor's coin expert's valuation to determine allocation amounts.  The Distribution Modification Order, entered October 12, 2016, authorized modifications to the Disposition Plan based on a new valuation of the Error Coins being determined through the retention of Great Collections and PCGS, and authorized the Trustee to set a new deadline for Victim/Creditors to opt out of receiving a distribution of Error Coins at 30 days following the filing of this Motion to approve the Distribution Schedule.  The foregoing actions of the Trustee were approved by this Court pursuant to Sections 105 and 363(b) of the Bankruptcy Code supported by the Trustee's business judgement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    This Motion is in furtherance of, and authorized by the prior orders of this Court. The

2    Trustee requests that the Court approve the Error Coin valuations set forth on **Exhibit "A"** and the

3    proposed allocation of Error Coins to Victim/Creditors on account of their claims, which is based on

4    these valuations, as set forth on the Distribution Schedule appended hereto as **Exhibit "B"**, treat the

5    Error Coin distributions as cash distributions in an amount equal to the value of the Error Coins

6    listed on the PCGS valuations, approve the Opt-Out procedures and authorize the payment of Great

7    Collections shipping costs, upon review of invoices by the Trustee, pursuant to the terms of its

8    retention by the Estate.

9    **A.    Approval of Valuation and Assignment of Cash Values**

10    The Error Coins were valued by PCGS, a highly regarded professional coin grading service

11    whose expertise, credentials and coin grading process were described in depth in the Distribution

12    Modification Motion approved by the Court. Each coin was separately examined and graded by a

13    series of coin graders (two, at minimum and in most instances three or more grading experts), who

14    enter independent grade determinations in a computer database until a consensus is reached and the

15    final grade assigned. After the coins have been graded, the value of each graded coin is determined

16    by reference to the PCGS Guide, consisting of the average dealer asking prices for PCGS-graded

17    coins. The prices are compiled from various sources including dealer ads in trade papers, dealer

18    fixed price lists and website offerings, significant auctions and activity at major coin shows. Dealer

19    specialist and expert collectors provide pricing input as well. The PCGS grading of the Error Coins

20    took place through the foregoing detailed process conducted over several months.

21    By this Motion, the Trustee requests that the Court (a) approve the values assigned to each of

22    the Error Coins by PCGS in the amounts set forth on **Exhibit A** hereto, and **(b)** find that the PCGS

23    valuation is reasonable based on all of the circumstances of this case.

24    The Error Coins are being distributed directly to Victim/Creditors in lieu of the proceeds of a

25    sale of such Error Coins in order to maximize the value being distributed to Victim/Creditors, as

26    described above and as authorized by the Disposition Order. The Trustee requests that the value of

27    the Error Coins to be distributed to Victim/Creditors be deemed by the Court as a distribution of

28    cash equal in amount to the value of the Error Coins received, based upon the PCGS values set forth

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

on **Exhibit "A"**. Further, the Trustee requests that the Court determine that the Error Coin distribution will reduce the claim amounts of Victim/Creditors by the amount of cash value allocated by PCGS to such Error Coins.

**B.**     **Approval of Distribution Schedule**

In accordance with the procedures established by the Disposition Modification Order, and based on the grading and valuation provided by PCGS for Great Collections, the Trustee's professionals have developed a Distribution Schedule, attached hereto as **Exhibit B**,[5] listing each claim and the specific Error Coins to be distributed to each Victim/Creditor on account thereof. As shown on the Distribution Schedule, each Victim/Creditor will receive a distribution of value equal to between 18.73% and 18.77% of the amount of his/her claim(s). The Trustee requests that the Court approve the proposed allocation of Error Coins to each Victim/Creditor as set forth on the Distribution Schedule (as filed under seal with the Court), subject to any supplemental and/or final Distribution Schedule filed with the Court (under seal) in this case.

**C.**     **Opt Out Procedures**

In accordance with the opt-out procedures approved in the Disposition Modification Order, this Notice of Motion and Motion, the Distribution Schedule and the Individual Error Coin Notices (which include the Opt-Out Notices) provide each Victim/Creditor with information sufficient to allow them to make an informed decision whether they wish to "opt-out" and not receive their allocated Error Coins. By opting out, the specific Error Coins allocated to the opting-out Victim/Creditor will be auctioned (the "Rejected Coins"), and any proceeds obtained will be, *inter alia*, used to pay claims and case expenses in the order of the priorities established by the Bankruptcy Code.

Each Victim/Creditor will receive an Individual Error Coin Notice containing the Opt-Out Notice in the form of **Exhibit "C"** to the Motion. Victim/Creditors are requested to complete the Opt-Out Notices prior to the July 3, 2017, 2017 Opt-Out Deadline. In the Opt-Out Notices,

---

[5] As discussed in the Notice of Motion, due to privacy concerns the Distribution Schedule has been drafted in such a way that each creditor is only identified by number and claim amount with the coins listed. A complete list of names, addresses and Error Coins for each Victim/Creditor was filed under seal with this Motion. However, each Victim/Creditor will receive the Individual Error Coin Notice, an individual private notice letting them know the specific Error Coins they will receive on account of their claims.

12

Victim/Creditors are to designate whether or not they wish to receive the Error Coins and are asked to provide updated addresses, if any, for the shipment of Error Coins. A stamped self-addressed return envelope for the mailing by Victim/Creditors of the Opt-Out Notices to the Trustee's professionals will be enclosed. Other parties in interest will receive a copy of the Motion and Notice of Motion only.

**As set forth in the Notice of Motion and in the Opt-Out Notice, if a Victim/Creditor chooses to opt out of receiving Error Coins, the Trustee will sell the Error Coins that were otherwise distributable to such Victim/Creditor through an auction. The auction proceeds will be used to pay claims and expenses of this bankruptcy case in accordance with the priorities established by the Bankruptcy Code. Therefore, if a Victim/Creditor "opts-out" of receiving Error Coins, it is very possible that such Victim/Creditor will receive no distribution from the Debtor's Estate on account of his/her claim.**

Pursuant to the Distribution Modification Order, the Court approved an opt-out deadline of thirty (30) days after the filing of this Motion for Victim/Creditors. The Trustee requests that the Court approve the Opt-Out Deadline set forth herein and approve the procedures set forth in this Motion including, without limitation, the Opt-Out Notice for Victim/Creditors to notify the Trustee of their decision to opt-out of receiving Error Coins. The Trustee also requests that the Court determine that the failure of any Victim/Creditor to timely return an Opt-Out Notice will be deemed to be an "opt-in" by default.

A supplemental Distribution Schedule, (to be filed under seal to protect the identities of the Victim/Creditors), shall be filed upon expiration of the Opt-Out Deadline. After the hearing on the Motion, and provided that the Court approves the Motion, the Trustee will file under seal a final Distribution Schedule identifying any additions or revisions to the supplemental Distribution Schedule either authorized by the Trustee, in her discretion, or as may be ordered by the Court at the hearing on the Motion.

**D.      Distribution by Great Collections**

Provided the Court approves this Motion at the hearing hereon, Great Collections will ship coins to Victim/Creditors in accordance with the final Distribution Schedule. The Trustee requests

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  authorization to pay the shipping costs incurred by Great Collections pursuant to the terms of the

2  Distribution Modification Order.  Great Collections will auction the Rejected Coins and any

3  remaining coins of the Debtor that were not sold at the Heritage Auction.  The net proceeds of that

4  auction will be used to pay case expenses in the priorities established by the Bankruptcy Code.

5       The Trustee believes that the approval of the PCGS coin valuation set forth on **Exhibit "A"**,

6  approval of the allocation of specific Error Coins to specific Victim/Creditors as set forth on **Exhibit**

7  **"B",** the treatment of Error Coin distributions as a distribution of cash of an amount equal to the

8  value of the Error Coins allocated to the Victim/Creditors, approval of the opt-out procedures and

9  related relief requested herein are in the best interests of the Estate and will maximize the return to

10  Victim/Creditors.  Further, the proposed disposition of the Error Coins, based upon the PCGS

11  valuations and in accordance with the allocations set forth in the Distribution Schedule, is consistent

12  with the prior Orders of this Court approving the Coordination Agreement, which authorized the

13  Estate to distribute to Victim/Creditors the assets of the Debtor seized by the Federal Government.

14  The relief sought by this Motion is the culmination of the Coordination Agreement, the Disposition

15  Plan (as modified by the Distribution Modification Order), developed in accordance with the

16  Coordination Agreement, and implements the goal of those agreements and orders, which is to

17  distribute value to Victim/Creditors.

### III.

### <u>CONCLUSION</u>

20       **WHEREFORE**, The Trustee respectfully requests that the Court approve the Motion and

21  grant such other relief as is just and proper under the circumstances.

22  Dated:    June 1, 2017             PACHULSKI STANG ZIEHL & JONES LLP

23

24             By    */s/ Linda F. Cantor*
                     Linda F. Cantor

25

26             Counsel for Weneta M.A. Kosmala, Chapter 7
               Trustee

27

28

# DECLARATION OF WENETA M.A. KOSMALA

I, Weneta M.A. Kosmala, declare as follows:

1.     I am the duly appointed chapter 7 trustee (the "Trustee") for the estate of The Tulving Company, Inc., debtor in the above-captioned case (the "Debtor"). I make this declaration ("Declaration") in support of the *Notice Of Motion And Motion For Order (I) Approving Coin Valuations And Distribution Schedule Of Error Coins To Victim/ Creditors, And (II) Granting Related Relief Pursuant To Sections 105 And 363 Of The Bankruptcy Code; Memorandum Of Points And Authorities In Support Thereof* (the "Motion"). All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

2.     Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge (albeit my own or that gathered by professionals rendering services to me), or my opinion based on experience, knowledge, and information concerning the estate. If called upon, I can and will competently testify to the facts stated herein.

3.     The Tulving Company, Inc. is a California corporation. The Debtor was in the business of selling and purchasing gold, silver, coins and other precious metals through its internet website or by phone. Prior to the filing of the bankruptcy, customer complaints concerning delayed or undelivered orders were increasingly made to the Better Business Bureau against the Debtor and in early March, 2014, a class-action lawsuit was filed against the Debtor and Hannes Tulving, Jr., the Debtor's sole shareholder and principal in the United States District Court, Northern District of California. A criminal investigation of the Debtor and Tulving by the Government was also being pursued, as described below. The Debtor ceased operations on or about March 3, 2014.

4.     The Debtor commenced this case by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 10, 2014. In light of the pending criminal investigation and other ongoing litigation against the Debtor, on March 18, 2014, the United States Trustee filed a Stipulation Appointing Chapter 11 Trustee [Docket No. 15], which was signed by both the Debtor and its attorney. The Stipulation was approved by the Bankruptcy Court on March 18, 2014 [Docket No. 16] and an Order was entered by the Court on March 21, 2014 approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee, appointing R. Todd Neilson

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

1    as Trustee of the Debtor's estate [Docket No. 22].  Thereafter upon notice and hearing, the case was

2    converted to a chapter 7 and R. Todd Neilson was appointed to serve as the chapter 7 Trustee

3    [Docket 108].  On March 22, 2016, Mr. Neilson filed his Withdrawal of Trustee [Docket 564].  The

4    UST filed its Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as

5    Trustee dated April 1, 2016 [Docket 566], appointing Weneta M. A. Kosmala as the successor

6    chapter 7 trustee of the Debtor's estate.

7         5.      On March 8, 2014, I am informed and believe that Special Agents of the United

8    States Secret Service executed a Search Warrant on the Debtor's offices on probable cause that the

9    Debtor and Hannes Tulving were engaged in fraud.  The Search Warrant resulted in the seizure of

10   the Debtor's property including rare coins and other valuable items.  Criminal proceedings against

11   the Debtor and Hannes Tulving ensued before the United States District Court for the Western

12   District of North Carolina.

13        6.      Hannes Tulving entered into a Plea Agreement with the United States of America, by

14   and through the Acting United States Attorney for the Western District of North Carolina in the

15   Criminal Case.  Pursuant to order of this Court entered July 22, 2015 [Docket No. 264], Hannes

16   Tulving was authorized to sign the Plea Agreement on behalf of the Debtor in the Criminal Case.

17   Under the Plea Agreement, the Defendants each plead guilty to 18 U.S.C. § 1343 wire fraud charge

18   as set forth in Count One of a Bill of Information in the Criminal Case and, among other things,

19   agreed to pay restitution to the victims of fraud.  The Coordination Order authorized Hannes Tulving

20   to sign on behalf of the Debtor a "Coordination Agreement for Disbursement of Seized Items from

21   United States to Bankruptcy Trustee and from Trustee to Victims.  The Coordination Agreement

22   also provided a framework for the administration by the Bankruptcy estate of the coins that had been

23   seized by the Government.  It required that the Trustee make a proposal for the disposition of the

24   seized assets to Victim/Creditors which was acceptable to the Government and approved by the

25   Bankruptcy Court and the District Court in the Criminal Case.

26        7.      As required by the Coordination Agreement, the Trustee made a proposal for the

27   disposition of the approximately 189,000 valuable coins that had been seized from the Debtor by the

28   Government.  The Disposition Plan was based upon the Debtor's inventory and valuation of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Seized Coins. Under the Disposition Plan, approximately 176,477 of the Seized Coins believed to

2   have a liquidation value in the range of $400,000 - $500,000, were to be sold at auction. Other

3   Seized Coins, consisting of approximately 12,539 Presidential Error-Missing Edge Letter Coins, had

4   been ascribed a value of $7,367,235 by the Debtor's coin expert, Miles Standish. However, the

5   Trustee was advised that an immediate sale of such a large number of Presidential Error-Missing

6   Edge Letter Coins and other Double Edge Coins would flood the market and greatly reduce their

7   value. The Disposition Plan therefore provided for the Error Coins to be distributed directly to

8   Victim/Creditors on a pro rata basis, in partial satisfaction of their claims. Any Victim/Creditors

9   could decide to "opt-out" of receiving Error Coins and the coins otherwise distributable to them

10  would be sold at a later auction.

11          8.      The Disposition Plan was accepted by the Government, approved by Order of the

12  Bankruptcy Court dated January 28, 2016 [Dkt. No. 494] and approved by the District Court.

13  Thereafter, Victim/Creditors were provided an opportunity to opt-out of receiving their allocated

14  share of Error Coins. Thirty (30) of the Victim/Creditors advised the Trustee's professionals of their

15  determination to opt-out of receiving Error Coins.

16          9.      Thereafter, in accordance with the Disposition Plan and orders of the bankruptcy

17  court, the Seized Coins were transferred from the federal depository in Wilmington, Delaware, to

18  Heritage Auctioneers in Dallas, Texas, and the Non-Error Coins were sold at auction on June 10,

19  2016. Consistent with estimates; the net proceeds of sale of the Non Error Coins amounted to

20  $385,314. (These amounts will be distributed pursuant to the priorities established by the

21  Bankruptcy Code and in accordance with the Disposition Plan.) However, it was the opinion of

22  Heritage that the Error Coins released by the Government and in its possession had an aggregate

23  value of approximately $500,000, and not $7,367,235, as reported by the Debtor's coin expert.

24          10.     As Trustee, I was unable to substantiate the vastly discrepant values allocated to the

25  Error Coins by the Debtor's coin expert, Miles Standish, and by Heritage. (While Mr. Standish

26  purportedly graded 12,539 Presidential Error-Missing Edge Letter Coins, only 2,800 of those coins

27  were separately marked; the remaining coins were comingled after their review so that their

28  individual values could not be determined. Mr. Standish refused to re-value the Error Coins.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Heritage proposed to grade and value the Error Coins but at a price of $250,000, which was cost prohibitive.) Without individual values for the coins, there was no mechanism for my professionals to prepare a ratable allocation of the Error Coins on account of individual Victim/Creditor claims. Under the circumstances, the Disposition Plan with respect to the distribution of Error Coins being held by Heritage could not be implemented.

11.    After conferring with other coin experts, in the exercise of my business judgment I determined to engage GreatCollections.com d/b/a Great Collections to have the Error Coins individually graded and encapsulated through Professional Coin Grading Service, a national coin grading service utilized by Great Collections in the ordinary course of business. In addition to the provision of grading services by PCGS at a discounted rate, Great Collections also agreed to transport the Error Coins from Dallas, Texas to Irvine, California, inventory the coins and ship the graded coins to Victim/Creditors at a total cost between $110,250 and $120,250, and auction coins not otherwise distributed.

12.    Pursuant to a motion filed on September 1, 2016, as Trustee I requested authority to (a) retain Great Collections to provide the grading, shipping and auction services, (b) modify the Disposition Plan to the extent it attributed a $7.367 million value to the Error Coins, (c) authorize the Trustee to set a new "Opt-Out" deadline after the filing of a distribution schedule based on the graded values of the Error Coins, and (d) sell by auction coins not distributed to Victim/Creditors, free and clear of all liens, claims and interests. That motion was approved by Order of the Court dated October 12, 2016.

13.    On or about April 24, 2017, PCGS completed its grading of the Error Coins and based upon the grades assigned, the Error Coins were ascribed values. PCGS graded 12,761 Presidential Error-Missing Edge Letter Coins and received 2,719 previously graded Error Coins. Great Collections also received from Heritage 658 presidential coins that are not considered Error Coins. In total, Great Collections is holding 16,238 coins, including 15,580 Error Coins which are now graded and encapsulated.

14.    As set forth on **Exhibit "A"** to the Motion, the graded value of the 15,580 Error Coins is $2,955,113. While this amount is approximately 40% of the value ascribed to the Error

Coins by the Debtor's coin expert, it is almost six times the value estimated by Heritage. Based on the value of the Error Coins, and as set forth on the Distribution Schedule prepared by the my professionals, Victim/Creditors who determine to "opt-in" and receive Error Coins from the Estate will receive coins valued at between 18.73% and 18.77% of the amount of their claims.

15.     By the Motion, as Trustee I am requesting that the Court approve the PCGS valuation of the Error Coins.

16.     The Disposition Order, entered January 28, 2106, authorized me, as Trustee, to implement the Disposition Plan, providing for the sale of the Non-Error Coins and the distribution of Error Coins directly to Victim/Creditors on a pro rata basis utilizing the Debtor's coin expert's valuation to determine allocation amounts. The Distribution Modification Order, entered October 12, 2016, authorized modifications to the Disposition Plan based on a new valuation of the Error Coins being determined through the retention of Great Collections and PCGS, and authorized me to set a new deadline for Victim/Creditors to opt out of receiving a distribution of Error Coins at 30 days following the filing of this Motion to approve the Distribution Schedule. The foregoing actions were approved by this Court pursuant to Sections 105 and 363(b) of the Bankruptcy Code supported by my business judgement.

17.     This Motion is in furtherance of, and authorized by the prior orders of this Court. I request that the Court approve the Error Coin valuations set forth on **Exhibit "A"** to the Motion and the proposed allocation of Error Coins to Victim/Creditors on account of their claims, which is based on these valuations, as set forth on the Distribution Schedule appended to the Motion as **Exhibit "B"**, treat the Error Coin distributions as cash distributions in an amount equal to the value of the Error Coins listed on the PCGS valuations, approve the Opt-Out procedures and authorize the payment of Great Collections shipping costs, upon my review of their invoices, pursuant to the terms of their  retention by the Estate.

18.     The Error Coins were valued by PCGS, a highly regarded professional coin grading service whose expertise, credentials and coin grading process were described in depth in the Distribution Modification Motion approved by the Court. As set forth in the Distribution Modification Motion and as represented in the PCGS website, at PCGS each coin is separately

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

examined and graded by a series of coin graders (two, at minimum and in most instances three or more grading experts), who enter independent grade determinations in a computer database until a consensus is reached and the final grade assigned. After the coins have been graded, the value of each graded coin is determined by reference to the PCGS Guide, consisting of the average dealer asking prices for PCGS-graded coins. The prices are compiled from various sources including dealer ads in trade papers, dealer fixed price lists and website offerings, significant auctions and activity at major coin shows. Dealer specialist and expert collectors provide pricing input as well. I am informed and believe that the PCGS grading of the Error Coins took place through the foregoing detailed process conducted over several months.

19.    By this Motion, as Trustee I request that the Court (a) approve the values assigned to each of the Error Coins by PCGS in the amounts set forth on **Exhibit "A"** to the Motion, and (b) find that the PCGS valuation is reasonable based on all of the circumstances of this case.

20.    The Error Coins are being distributed directly to Victim/Creditors in lieu of the proceeds of a sale of such Error Coins in order to maximize the value being distributed to Victim/Creditors, as described above and as authorized by the Disposition Order. As Trustee, I request that the value of the Error Coins to be distributed to Victim/Creditors be deemed by the Court as a distribution of cash equal in amount to the value of the Error Coins received, based upon the PCGS values set forth on **Exhibit "A"**. Further, as Trustee I request that the Court determine that the Error Coin distribution will reduce the claim amounts of Victim/Creditors by the amount of cash value allocated by PCGS to such Error Coins.

21.    In accordance with the procedures established by the Disposition Modification Order, and based on the grading and valuation provided by PCGS for Great Collections, my professionals have developed a Distribution Schedule, attached to the Motion as **Exhibit "B"**, listing each claim and the specific Error Coins to be distributed to each Victim/Creditor on account thereof. As shown on the Distribution Schedule, each Victim/Creditor will receive a distribution of value equal to between 18.73% and 18.77% of the amount of his/her claim(s). As Trustee I request that the Court approve the proposed allocation of Error Coins to each Victim/Creditor as set forth on the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Distribution Schedule (as filed under seal with the Court), subject to any supplemental and/or final

2  Distribution Schedule filed with the Court (under seal) in this case.

3       22.     In accordance with the opt-out procedures approved in the Disposition Modification

4  Order, this Notice of Motion and Motion, the Distribution Schedule and the Individual Error Coin

5  Notices (containing the Opt-Out Notice) provide each Victim/Creditor with information sufficient to

6  allow them to make an informed decision whether they wish to "opt-out" and not receive their

7  allocated Error Coins.  By opting out, the specific Error Coins allocated to the opting-out

8  Victim/Creditor will be auctioned, and any proceeds obtained will be, inter alia, used to pay claims

9  and case expenses in the order of the priorities established by the Bankruptcy Code.

10       23.     Each Victim/Creditor will receive an Opt-Out Notice in the form of **Exhibit "C"** to

11  the Motion.  Victim/Creditors are requested to complete the Opt-Out Notices prior to the July 3,

12  2017 Opt-Out Deadline.  In the Opt-Out Notices, Victim/Creditors are to designate whether or not

13  they wish to receive the Error Coins and are asked to provide updated addresses, if any, for the

14  shipment of Error Coins.  A stamped self-addressed return envelope for the mailing by

15  Victim/Creditors of the Opt-Out Notices to my professionals will be enclosed.  Other parties in

16  interest will receive a copy of the Motion and Notice of Motion only.

17       24.     As set forth in the Notice of Motion and in the Opt-Out Notice, if a Victim/Creditor

18  chooses to opt out of receiving Error Coins, I will cause the sale of the Error Coins that were

19  otherwise distributable to such Victim/Creditor through an auction.  The auction proceeds will be

20  used to pay claims and expenses of this bankruptcy case in accordance with the priorities established

21  by the Bankruptcy Code.  Therefore, if a Victim/Creditor "opts-out" of receiving Error Coins, it is

22  very possible that such Victim/Creditor will receive no distribution from the Debtor's Estate on

23  account of his/her claim.

24       25.     Pursuant to the Distribution Modification Order, the Court approved an opt-out

25  deadline of thirty (30) days after the filing of this Motion for Victim/Creditors.  As Trustee, I request

26  that the Court approve the Opt-Out Deadline set forth herein and approve the procedures set forth in

27  this Motion including, without limitation, the Opt-Out Notice for Victim/Creditors to notify my

28  professionals of their decision to opt-out of receiving Error Coins.  As Trustee I also request that the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

1    Court determine that the failure of any Victim/Creditor to timely return an Opt-Out Notice will be

2    deemed to be an "opt-in" by default.

3        26.    A supplemental Distribution Schedule, (to be filed under seal to protect the identities

4    of the Victim/Creditors), shall be filed upon expiration of the Opt-Out Deadline.  After the hearing

5    on the Motion, and provided that the Court approves the Motion, I will cause to be filed under seal a

6    final Distribution Schedule identifying any additions or revisions to the supplemental Distribution

7    Schedule either authorized by me, as Trustee, in my discretion, or as may be ordered by the Court at

8    the hearing on the Motion.

9        27.    Provided the Court approves this Motion at the hearing hereon, Great Collections will

10   ship coins to Victim/Creditors in accordance with the final Distribution Schedule.  As Trustee I

11   request authorization to pay the shipping costs incurred by Great Collections pursuant to the terms of

12   the Distribution Modification Order.  Great Collections will auction the Rejected Coins and any

13   remaining coins of the Debtor that were not sold at the Heritage Auction.  The net proceeds of that

14   auction will be used to pay case expenses in the priorities established by the Bankruptcy Code.

15       28.    In the exercise of my business judgment as Trustee, I believe that the approval of the

16   PCGS coin valuation set forth on **Exhibit "A"**, approval of the allocation of specific Error Coins to

17   specific Victim/Creditors as set forth on **Exhibit "B"**,  the treatment of Error Coin distributions as a

18   distribution of cash of an amount equal to the value of the Error Coins allocated to the

19   Victim/Creditors, approval of the opt-out procedures and related relief requested herein, are in the

20   best interests of the Estate and will maximize the return to Victim/Creditors.  Further, the proposed

21   disposition of the Error Coins, based upon the PCGS valuations and in accordance with the

22   allocations set forth in the Distribution Schedule, is consistent with the prior Orders of this Court

23   approving the Coordination Agreement, which authorized the Estate to distribute to Victim/Creditors

24   the assets of the Debtor seized by the Federal Government.  The relief sought by this Motion is the

25   culmination of the Coordination Agreement, the Disposition Plan (as modified by the Distribution

26   Modification Order), developed in accordance with the Coordination Agreement, and implements

27   the goal of those agreements and orders, which is to distribute value to Victim/Creditors.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct.

3    Executed this ___ day of June 2017, at Santa Ana, California.

4

5                                          Weneta M. A. Kosmala

6

7

8

9

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DECLARATION OF DAVID JUDD

I, David H. Judd, declare and state as follows:

1.    This declaration is submitted in support of the *Notice Of Motion And Motion For Order (I) Approving Coin Valuations And Distribution Schedule Of Error Coins To Victim/ Creditors, And (II) Granting Related Relief Pursuant To Sections 105 And 363 Of The Bankruptcy Code; Memorandum Of Points And Authorities In Support Thereof* (the "Motion"). All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

2.    Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge (albeit my own or that gathered by professionals rendering services to me), or my opinion based on experience, knowledge, and information concerning the estate. If called upon, I can and will competently testify to the facts stated herein.

3.    I am a Director of Berkeley Research Group, LLC ("BRG"). By order entered May 29, 2014 [Dkt. No. 105], the Bankruptcy Court approved the employment of BRG as accountants and financial advisors for R. Todd Neilson, the chapter 11 trustee for the bankruptcy estate of The Tulving Company, Inc. After conversion of this case to a case under chapter 7 of the Bankruptcy Code, by order entered July 15, 2014 [Dkt. No. 151], the Bankruptcy Court approved the employment of BRG as financial advisors to R. Tod Neilson, as chapter 7 trustee for the Debtor's bankruptcy estate. Subsequently, by Order entered July 20, 2016 [Dkt. No. 609], BRG was retained as financial advisors to Weneta M.A. Kosmala, the successor trustee to R. Todd Neilson appointed in this case effective April 1, 2016. The Bankruptcy Court has approved the employment of BRG to provide a variety of accounting and financial related services in connection with the Debtor's bankruptcy case.

4.    As part of the accounting and financial related services for the trustee BRG has provided in connection with the bankruptcy case, I have been responsible for reviewing and analyzing Debtor's accounting and other financial records since the appointment of the chapter 11 trustee of Debtor's estate. In order to perform those functions, I, together with other professionals within BRG, have reviewed and become familiar with, among other things, claims asserted by Victim/Creditors against the Debtor's estate. I am also familiar with the final Victim/Creditors list

submitted to the Bankruptcy Court and the District Court in the Criminal Case in accordance with

the *Order for Coordination Agreement for Distribution of Seized Items from United States to*

*Bankruptcy Trustee and from Trustee to Victims* [Dkt. No. 580] (the "Victim/Creditor List").  The

Victim/Creditor List was approved by the Trustee and the Government and lists the final allowed

claim amount for each Victim/Creditor entitled to restitution under the Coordination Order approved

by Order of this Court dated July 22, 2015 [Dkt. No. 264].

     5.    I have carefully reviewed the Error Coin valuations prepared by PCGS, a copy of

which is appended to the Motion as **Exhibit "A"**.  Based on those values and at the direction of the

Trustee, I determined unilaterally how to allocate the Error Coins to Victim/Creditors based upon the

claim amounts set forth on the Victim/Creditor List to reach a pro rata equal distribution of Error

Coins as uniform as possible given the varying valuations of the Error Coins.  The resulting

allocation of Error Coins to Victim/Creditors is set forth on the Distribution Schedule appended to

the Motion as **Exhibit "B"**.

     6.    As shown on **Exhibit "B"**, each Victim/Creditor is proposed to receive a distribution

of Error Coins equal in value to between 18.73% and 18.77% of the amount of his/her claim(s).

Based upon my calculations, the proposed distributions set forth on the Distribution Schedule come

as close as practicable to an equal distribution of value of Error Coins to all Victim/Creditors.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Executed this 1st day of June 2017, at Los Angeles, CA.

David Judd

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA