1  Linda F. Cantor (CA Bar No. 153762)
   James K.T. Hunter (CA Bar No. 73369)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, California  90067-4100
   Telephone: 310-277-6910
4  Facsimile: 310-201-0760
   Email:  lcantor@pszjw.com
5          jhunter@pszjlaw.com

6

7  Counsel for Weneta M. A. Kosmala, Chapter 7 Trustee for
   The Tulving Company, Inc.

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   SANTA ANA DIVISION

12  In re:                          Case No.: 8:14-bk-11492-ES

13  The Tulving Company, Inc.,      Chapter 7

14                                  NOTICE OF MOTION AND MOTION FOR
           Debtor.                  ORDER APPROVING CHAPTER 7
15                                  TRUSTEE'S SETTLEMENT WITH ARMEN
                                    HAIG GUGASIAN AND LEVON
16                                  GUGASIAN; MEMORANDUM OF POINTS
                                    AND AUTHORITIES; DECLARATION OF
17                                  WENETA M. A. KOSMALA

18                                  Date:  December 14, 2017
                                    Time:  10:30 a.m.
19                                  Place: 411 West Fourth Street
                                           Courtroom 5A
20                                         Santa Ana, Ca  92701

21  TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY JUDGE,

22  THE OFFICE OF THE UNITED STATES TRUSTEE, PARTIES THAT HAVE FILED

23  REQUESTS FOR SPECIAL NOTICE, AND OTHER INTERESTED PARTIES:

24         PLEASE TAKE NOTICE that Weneta M.A. Kosmala, the duly appointed chapter 7 trustee

25  ("Trustee"), in the above captioned case of the Tulving Company, Inc., the debtor herein ("Debtor")

26  hereby moves (the "Motion") for entry of an order, pursuant to Federal Rule of Bankruptcy

27  Procedure 9019(a), approving a settlement agreement by and among the Trustee, on the one hand,

28  and Armen Haig Gugasian and Levon Gugasian (collectively, the "Gugasians"), on the other hand

                                    1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(the "Settlement Agreement"). The terms of the settlement are specifically set forth in the Settlement Agreement, a copy of which is attached as Exhibit 1 to the Declaration of Weneta M.A. Kosmala (the "Kosmala Declaration") annexed hereto.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on December 14, 2017, at 10:30 a.m. in Courtroom 5a, 411 West Fourth Street, Santa Ana, California 92701, before the Honorable Erithe Smith, for the Court to consider approval of the Settlement Agreement.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, Federal Rule of Bankruptcy Procedure 9019, Local Bankruptcy Rule 9013-1, the Memorandum of Points and Authorities and the Kosmala Declaration appended hereto, and all pleadings, documents and records on file with this Court, as well as any other documentary evidence as may be presented to this Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the Motion. The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

**WHEREFORE**, The Trustee respectfully requests that the Court (a) grant the Motion, (b) approve the Settlement Agreement, (c) authorize the Trustee to take such actions as are reasonable and necessary to implement the Settlement Agreement, and (d) grant such other relief as is just and proper under the circumstances.

DATED: November 21, 2017                PACHULSKI STANG ZIEHL & JONES LLP


                                        By:    /s/ Linda F. Cantor
                                               LINDA F. CANTOR
                                               JAMES K.T. HUNTER

                                        Attorneys for Weneta M. A. Kosmala, Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:310622.1 59935/002

**Table of Contents**

I. INTRODUCTION ........................................................................................................... 1
II. JURISDICTION AND VENUE ..................................................................................... 2
III. STATEMENT OF FACTS ........................................................................................... 2
    A.    General Background of the Debtor ....................................................... 2
    B.    Procedural Posture of the Bankruptcy Case ...................................... 2
    C.    The Trustee's Claims against the Gugasians ..................................... 3
    A.    Levon Gugasian - Alleged Fraudulent Transfers ........................... 3
        **1.**    Lease Transfers/Compensation/Repairs ............................... 3
        **2.**    Proofs of Claims ....................................................................... 5
    A.    Armen Gugasian - Alleged Fraudulent Transfers ......................... 5
        **1.**    Consulting Fee Transfers ........................................................ 5
    D.    The Gugasians' Contentions ................................................................ 6
    E.    Mediation ................................................................................................... 7
IV. OVERVIEW OF THE AGREEMENT ......................................................................... 7
V. THE COURT SHOULD APPROVE THE SETTLEMENT  AGREEMENT PURSUANT
TO RULE 9019(a) ............................................................................................................. 9
    A.    The Standard of Review......................................................................... 9
    B.    The Settlement Agreement Satisfies the Rule 9019 Standard ........... 11
        1.    Probability of Success / Complexity of Litigation.................... 11
        2.    Difficulties With Collection .................................................... 12
        3.    Interests of Creditors ............................................................. 12
    C.    Adequate Notice of the Motion Has Been Given ............................... 12
VI. CONCLUSION .............................................................................................................. 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# CASES

*A & C Props.*, 784 F.2d at 1381 .................................................................................. 10

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting
   *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)) ................................................ 10

*In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R.
   764 (S.D.N.Y. 1985) ................................................................................................. 10

*In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991) ................ 10

*Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004) .................................. 10

*Pacific Gas*, 304 B.R. at 417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74
   (Bankr. D. Or. 2002)) ................................................................................................ 11

*Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976) .................... 10

*Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968) ............................................... 10

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir.
   1988) (quoting *A & C Props.*, 784 F.2d at 1380) ...................................................... 10

# STATUTES

11 U.S.C. § 502(b) ........................................................................................................ 5

11 U.S.C. § 502(d) ........................................................................................................ 5

11 U.S.C. § 550 ............................................................................................................ 5

11 U.S.C. §§ 544(b) ...................................................................................................... 6

11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Cal.Civ.Code Sections 3439.04(a)(2),
   3439.05 and 3439.07 .................................................................................................. 4

11 U.S.C. §§ 544(b), 548 and 550 and Cal.Civ.Code Sections 3439.07 and 3439.08 ........... 6, 4

18 U.S.C. § 1343 .......................................................................................................... 2, 1

28 U.S.C. § 157(b)(2) .................................................................................................... 2

28 U.S.C. §§ 157 .......................................................................................................... 2

Cal.Civ.Code Sections 3439.04(a)(2), 3439.05 and 3439.07 ................................................ 6

*In re Stein*, 236 B.R. 34, 37 (D. Or. 1999) ..................................................................... 10

*Marandas v. Bishop (In re Sassalos)*, 160 B.R. 646, 653 (D. Or. 1993) ................................ 9

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) .................... 9

Rule 9019(a) of the Bankruptcy Rules .............................................................................. 9

# OTHER AUTHORITIES

Federal Rule of Bankruptcy Procedure 9019(a) ................................................................. 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:310622.1 59935/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By way of the Motion, the Trustee seeks approval of a compromise memorialized in the Settlement Agreement that will resolve claims made in two separate adversary proceedings commenced by R. Todd Neilson, the former chapter 7 trustee in this case, against Levon Gugasian ("Levon") and Armen Gugasian ("Armen"), Adversary Proceeding No. 8:16-ap-01083-ES (the "Levon Adversary Proceeding") and Adversary Proceeding No.8:16-ap-01084-ES (the "Armen Adversary Proceeding" and, together with the Levon Adversary Proceeding, the "Gugasian Adversary Proceedings"). The Gugasian Adversary Proceedings seek the avoidance and recovery of certain transfers made by the Debtor specified in the respective complaints (the "Alleged Fraudulent Transfers"). Additionally, the Levon Adversary Proceeding objects to the proofs of claims filed by Levon against the Debtor in this case. As set forth in greater detail herein and in the Settlement Agreement, the settlement provides for[1] (a) a payment to the Trustee for the benefit of the Estate the amount of $648,250.00 (the "Settlement Payment"), (b) the release and waiver of all claims that the Gugasians, or either of them, have filed or could assert against the Estate, including but not limited to Levon's Claims, (c) the filing by Levon of Notices of Withdrawal of Levon's Claims, (d) the release and waiver of all claims and claims for relief that the Trustee has filed or could assert against either or both of the Gugasians, including but not limited to the claims for relief asserted in the Gugasian Adversary Proceedings, (e) the Trustee's dismissal of the Gugasian Adversary Proceedings, with prejudice, and (f) broad mutual releases and waivers of California Civil Code § 1542 and similar laws by the Trustee and the Gugasians. The Trustee submits that the Settlement Agreement's beneficial terms to the Estate and satisfaction of the prevailing legal standard merit approval.

---

[1] While the summary herein of the principal terms of the Settlement Agreement is intended to be accurate, parties in interest should read the full Settlement Agreement for the complete terms and if there is any discrepancy between the summary herein and the Settlement Agreement, the terms of the Settlement Agreement control.

1

DOCS_LA:310622.1 59935/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## II.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this matter is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.

## STATEMENT OF FACTS

### A.    General Background of the Debtor

Debtor The Tulving Company, Inc. ("Tulving") was in the business of selling and purchasing gold, silver, coins, bullion, and other precious metals through its internet website or by phone. Prior to the filing of this bankruptcy case, customer complaints concerning delayed or undelivered orders were increasingly made to the Better Business Bureau against the Debtor. In early March 2014, a class action lawsuit was filed against the Debtor and its president and sole shareholder, Hannes Tulving ("Hannes"), in the United States District Court for the Northern District of California.

The Debtor ceased operations on or about March 3, 2014. Shortly before the commencement of its bankruptcy proceedings on March 10, 2014 (the "Petition Date"), the Secret Service and the Department of Justice raided the Debtor's business offices, and seized the Debtor's computers, documents and valuable coins as part of an ongoing criminal investigation. Hannes eventually agreed to enter into a plea agreement with the Government in which he pled guilty to one count of 18 U.S.C. § 1343 wire fraud charge as set forth in Count One of a Bill of Information in the Criminal Case and, among other things, agreed to pay restitution to the victims of fraud. Hannes is currently serving a 30 month sentence at the federal prison in Butner, North Carolina.

### B.    Procedural Posture of the Bankruptcy Case

On March 18, 2014, the United States Trustee ("UST") filed a Stipulation Appointing Chapter 11 Trustee [Docket No. 15] (the "Stipulation"), which was signed by both the Debtor and its attorney. The Stipulation was approved by the Bankruptcy Court on March 18, 2014 [Docket No. 16] and an Order was entered by the Court on March 21, 2014 approving the UST's Application for the Appointment of a Chapter 11 Trustee, appointing R. Todd Neilson as Trustee of the Debtor's

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  estate [Docket No. 22].  Thereafter upon notice and hearing, the case was converted to a chapter 7

2  and R. Todd Neilson was appointed as the chapter 7 Trustee [Docket 108].

3    On March 22, 2016, Mr. Neilson filed his Withdrawal of Trustee [Docket 564].  The UST

4  filed its Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as

5  Trustee dated April 1, 2016 [Docket 566], appointing Weneta M. A. Kosmala as the chapter 7 trustee

6  of the Debtor's estate.

7  **C.** **The Trustee's Claims against the Gugasians**

8    **A.** **Levon Gugasian - Alleged Fraudulent Transfers**

9     **1.** Lease Transfers/Compensation/Repairs

10    As set forth in the complaint filed by the Trustee in the Levon Adversary Proceeding, Levon

11  leased three different parcels of real property to Debtor.  Two, located at 2110 ½ and 2112 ½ W.

12  Ocean Front, Newport Beach, were for adjoining residential properties (the "Ocean Front

13  Properties").  The third, located at 750 W. 17th Street, Unit A, was for commercial property which

14  constituted Debtor's principal place of business ("17th Street").

15    The original leases of all three properties, entered into in 2006 for the Ocean Front Properties

16  and 2008 for 17th Street, were upon information and belief at fair market rates which had escalated

17  as of January 1, 2011 to $16,500 per month for each of the Ocean Front Properties and $13,230 per

18  month for the 17th Street Property -- or a collective monthly rental of $46,230.

19    The Trustee has alleged that for the years 2006 through 2010, Debtor and Hannes treated all

20  of the rent paid by Debtor with respect to the Original 2110 ½ W. Ocean Front Lease and fifty

21  percent (50%) of the rent paid by Debtor with respect to the original 2112 ½ W. Ocean Front Lease

22  (the unit in which Hannes resided) as constituting compensation of Hannes by Debtor which Hannes

23  was required to, and did, recognize as income for which Hannes was liable to pay income taxes to

24  both The Internal Revenue Service ("IRS") and the California Franchise Tax Board ("CFTB").

25    The Trustee has alleged that on or about January 1, 2011, Levon and Debtor entered into new

26  leases (the "Replacement Leases") for the Ocean Front and 17th Street Properties which replaced the

27  original leases and reallocated the rents among the three leased premises to substantially increase the

28  rent for 17th Street (i.e., for January, 2011, the monthly rent was increased from $13,230 to $30,000

3

1  and substantially decreased the rents for 2110 ½ W. Ocean Front (i.e., for January, 2011, the

2  monthly rent were decreased from $16,500 to $4,500) and 2112 ½ Ocean Front (i.e., for January,

3  2011, the monthly rent was decreased from $16,500 to $5,800).

4      The Trustee has alleged that the rents specified in the Replacement Leases did not reflect,

5  and were not understood or intended by either Debtor or Levon to reflect, the respective fair market

6  rents of the three leased premises, but rather that the Replacement Leases were entered into as part of

7  a plan on the part of Debtor, of which the Trustee believes Levon was cognizant, to defraud two of

8  its creditors, the IRS and CFTB, by artificially and fraudulently reallocating the rental obligations to

9  (1) decrease the rents for 2110 ½ W. Ocean Front and 2112 ½ W. Ocean Front, which Hannes was

10  required to recognize as income/distributions for which Hannes was liable to pay income taxes to the

11  IRS and CFTB, below the fair market rents of those premises, and (2) increase the rent for 17th Street

12  which Hannes was not required to recognize as income/distributions for which Hannes was liable to

13  pay income taxes to the IRS and CFTB, above the fair market rent of those premises.  Thus, whereas

14  Hannes would have been required to recognize as income for which Hannes was liable to pay

15  income taxes to the IRS and CFTB the sum of $24,750 of the rents due for January 2011 pursuant to

16  the original 2110 ½ W. Ocean Front Lease and the original 2112 ½ W. Ocean Front Lease.  Hannes

17  only recognized as income for which Hannes was liable to pay income taxes to the IRS and CFTB

18  the sum of $7,400 of rents due for January 2011 pursuant to the Replacement Leases for the Ocean

19  Front Properties. These lease modifications reduced the income that Hannes would have recognized

20  for January 2011 by $17,350 and an amount which the Trustee is informed and believes, and based

21  thereon alleges, exceeded $200,000 for the entirety of 2011.

22      The Trustee seeks to avoid and recover[2] all of the payments made by the Debtor after January

23  1, 2011 on the Replacement Leases, or a total of $259,500 for the Ocean Front Properties and

24  $971,200 for 17th Street for a combined total of $1,230,700 as intentionally fraudulent transfers [3].

25

26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27  [2] Recovery of the transfers is sought under 11 U.S.C. §§ 544(b), 548 and 550 and Cal.Civ.Code Sections 3439.07 and 3439.08.

28  [3] Avoidance is sought under 11 U.S.C. §§ 544(b) and 548(a)(1)(A) and Cal Civ Code Sections 3439.04(a)(1) and 3439.07 as intentionally fraudulent pre-petition transfers.

4

The Trustee has also alleged that within the four years preceding the Petition Date, Debtor made a series of payments to or for the benefit of Levon for (a) consulting services which were never provided in the gross amount of $225,000 ($142,216.02 net of taxes), and (b) for rent, repair or maintenance of premises located at 740 W. 16th Street, Costa Mesa, CA amounting to $454,067.88, for which the Debtor received no benefit. The Trustee seeks to avoid and recover the consulting fees and foregoing payments and the payments for rent under the Replacement 750 W. 17th Street, Unit A Lease, as constructively fraudulent transfers.[4]

### 2.    Proofs of Claims

Levon filed three separate proofs of claims, designated Claim Nos. 308, 309 and 310 (collectively, the "Proofs of Claims") seeking lease rejection damages and pre-petition arrearages in the amounts of $650,025.15, $128,242.48 and $142,789.20, respectively, for three separate parcels of real property leased by Levon to Debtor. Also on September 25, 2014, Levon filed a Request for Payment of Administrative Expense in the amount of $79,200.00 (Docket No. 179) (the "Request") for post-petition rent for the same parcel of real property which is the subject of Proof of Claim 308. The Proofs of Claim and the Request are hereinafter referred to collectively as "Levon's Claims").

Through the Levon Adversary Proceeding, the Trustee also seeks (1) the disallowance in their entireties of Levon's Claim Nos. 309 and 310, filed with respect to the Trustee's rejection of the Ocean Front Properties in the amount of $128,242.48 and $142,789.20, *respectively*, under 11 U.S.C. § 502(b) on the ground that Levon in fact substantially benefitted by the termination of those below fair market value leases, and (2) the disallowance pursuant to 11 U.S.C. § 502(d) of Levon's Claims, until such time as Levon has paid the amount for which Levon is liable under 11 U.S.C. § 550.

### A.    Armen Gugasian - Alleged Fraudulent Transfers

#### 1.    Consulting Fee Transfers

The Trustee has alleged that within the four years preceding the Petition Date, the Debtor made a series of payments to or for the benefit of Armen as purported compensation for consulting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[4] Avoidance is sought under 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Cal.Civ.Code Sections 3439.04(a)(2), 3439.05 and 3439.07 as constructively fraudulent pre-petition transfers.

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    services provided by Armen when, in reality, no such services or anything else of value was given to

2    the Debtor in return.  The Trustee seeks to avoid those payment as constructively fraudulent

3    prepetition transfers under 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Cal.Civ.Code Sections

4    3439.04(a)(2), 3439.05 and 3439.07 and recover such transfers, or their value, under 11 U.S.C.

5    §§ 544(b), 548 and 550 and Cal.Civ.Code Sections 3439.07 and 3439.08.  The gross payments

6    totaled $225,000; after taxes, Levon received $145,095.74.

7    **D.    The Gugasians' Contentions**

8          The Gugasians dispute the allegations in the complaints.  The Gugasians assert there is no

9    evidence demonstrating actual fraudulent transfers on the part of the Gugasians and that, to the

10   extent the Debtor engaged in actual fraudulent transfers, the Gugasians had no knowledge and

11   derived no benefit from any intentional fraudulent transfers by the Debtor.  With respect to the

12   constructively fraudulent transfers, the Gugasians allege that the Trustee has failed to demonstrate

13   that the Debtor was insolvent during the four years that the transfers were made and that, at most,

14   Debtor remained solvent at least until the end of 2012.  Further, the Gugasians assert that there was

15   reasonably equivalent value given for all of the transfers and/or that the transfers were on account of

16   an antecedent debt.

17         The Gugasians also dispute the Trustee's allegations that no value was provided to the

18   Debtor for their consulting services and for the rent, repair or maintenance of premises located at

19   740 W. 16th Street, Costa Mesa, CA.  The Gugasians assert that the consulting services and

20   payments made relating to the 16th Street property were pursuant to an agreement between the

21   Gugasians and the Debtor to enter into a new business venture for minting silver coins that was to be

22   owned 60% by the Debtor and 40% by Levon Gugasian.  Relating to that agreement, the Gugasians

23   assert that they agreed to provide funding in the amount of $2 million to purchase the silver and

24   equipment to be used in the mining process.  The Gugasians assert that they dedicated extensive time

25   and resources to build the silver minting business with the Debtor but were ultimately forced by

26   market constraints to stop moving forward with this venture.

27         The Gugasians have also asserted that the Debtor and its creditors benefitted from the

28   reallocation of rents on the properties that were leased to the Debtor and that they received rental

6

DOCS_LA:310622.1 59935/002

1   payments in good faith and, in return, gave value to the Debtor by way of the leased premises and

2   accommodations respecting same.  They contest the objections to Levon's Claims and allege that

3   their lease rejection claims represent actual damages (as the leases were not below market).  The

4   Gugasians also assert that the complaints filed by the Trustee are barred by applicable Federal and

5   State Statutes of Limitations.

6   **E.     Mediation**

7          On November 3, 2017, the Trustee, Levon Gugasian and Armen Haig Gugasian (collectively,

8   the "Parties") participated in mediation with the Honorable Mitchel R. Goldberg, Retired, as

9   mediator.[5]  Through mediation, the Parties reached a settlement which is memorialized in the

10  Settlement Agreement.

11                                       **IV.**

12                        **OVERVIEW OF THE AGREEMENT**

13         The following is a summary of the terms and conditions of the Settlement Agreement,

14  qualified in its entirety by the actual provisions of the Settlement Agreement itself:

15         1.     Settlement Payment.  The Gugasians shall pay the sum of $648,250.00 to the Trustee

16  on or before 10 days after all parties have executed the Settlement Agreement.  The Trustee will

17  segregate the Settlement Payment from all other funds, shall deposit the Settlement Payment into a

18  separate account, and shall not transfer the Settlement Payment into the Trustee's general operating

19  account for the Estate until the fifteenth day after entry of a Bankruptcy Court order by approving

20  the Settlement Agreement (the "Effective Date").  If the Settlement Agreement is not approved by an

21  order of the Bankruptcy Court within 60 days after execution of the Settlement Agreement by all of

22  the parties, then the Trustee will immediately return the Settlement Payment to the Gugasians and

23  the Settlement Agreement shall be deemed of no force and effect, and the Gugasian Adversary

24  Proceedings shall proceed as if the Settlement Agreement had never been entered into except insofar

25  any additional extensions of time and deadlines are deemed necessary and/or appropriate.

26

27

28  _____
    [5] The parties had previously attempted to resolve their disputes through mediation held on August 10, 2016, however, no
    resolution was achieved at that time.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

2.    <u>Allocation of Settlement Payment</u>.  The Settlement Payment shall be allocated between Levon and Armen as follows:  Armen shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Armen as a Form W-2 employee of the Debtor.  Levon shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Levon as a Form W-2 employee of the Debtor, plus the sum of $198,250 to repay rent for the property located at 750 West 17th Street, Costa Mesa, California, that the Debtor paid to Levon as a landlord of the Debtor.

3.    <u>Bankruptcy Court Approval Required</u>.  Within 10 days after the execution of the Settlement Agreement by all of the Parties, the Trustee shall file a motion for an order approving the Settlement Agreement with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

4.    <u>Release and Waiver of Gugasians' Claims and Withdrawal of Levon's Claims</u>.  As of the Effective Date of the Settlement Agreement, the Gugasians will release and waive all claims that the Gugasians, or either of them, have filed or could assert against the Estate, including but not limited to Levon's Claims.  Within 10 days after the Effective Date of the Settlement Agreement, Levon shall file with the Court Notices of Withdrawal of each and all of Levon's Claims.

5.    <u>Release and Waiver of Trustee's Claims and Dismissal of Gugasian Adversary Proceedings</u>.  As of the Effective Date of the Settlement Agreement, the Trustee will release and waive all claims and claims for relief that the Trustee has filed or could assert against either or both of the Gugasians, including but not limited to the claims for relief asserted in the Gugasian Adversary Proceedings.  Within 10 days after the Effective Date of the Settlement Agreement, the Trustee shall file with the Bankruptcy Court stipulations requesting dismissal with prejudice of each and both of the Gugasian Adversary Proceedings.

6.    <u>No Admission of Liability</u>.  The Settlement Agreement is executed by the Parties for the sole purpose of settling and compromising the matters involved in the disputes that are discussed therein, and it is expressly understood and agreed, as a condition thereof, that the Settlement Agreement shall not constitute nor be construed to be an admission of the truth or correctness of any claim, claim for relief, or defense asserted by any of the Parties hereto, or an admission of liability

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

by any person, firm, corporation, governmental unit, or other entity therein named or described.  In

addition, the Gugasians specifically disclaim any liability to, or wrongful acts against, the Debtor,

the Estate, the Trustee, and any other person or entity.

7.    <u>Mutual Releases</u>  For good and valuable consideration as provided in the Settlement

Agreement, save and except for the obligations owing pursuant to the Settlement Agreement, the

Parties knowingly, voluntarily, unconditionally, irrevocably, and absolutely release and discharge

each other from any and all claims, claims for relief, demands, economic damages, non-economic

damages, punitive damages, consequential damages, incidental damages, attorneys' fees, and/or any

and all damages, losses, liabilities, obligations, costs, expenses, actions, claims, claims for relief, or

causes of action, whether sounding in contract, tort, law, equity, or otherwise, relating to Levon's

Claims, the Gugasian Adversary Proceedings , and the claims for relief which are the subject of the

Gugasian Adversary Proceedings.

8.    <u>Waiver of California Civil Code § 1542 and Similar Laws</u>.  The Parties, and each of

them, understand and acknowledge that there are laws which may invalidate releases of claims

which are unknown to the releasing party.  The Parties, and each of them, expressly acknowledge

and agree that by the Settlement Agreement they are waiving and relinquishing any and all rights

which they have or might have against any and all of the Parties they release pursuant to the

Settlement Agreement, or any of them, under such laws, including but not limited to any and all

rights afforded to each of them under California Civil Code § 1542.

## V.

## <u>THE COURT SHOULD APPROVE THE SETTLEMENT</u>

## <u>AGREEMENT PURSUANT TO RULE 9019(a)</u>

**A.    The Standard of Review**

"The law favors compromise and not litigation for its own sake. . . ."  *Martin v. Kane (In re A*

*& C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *see also Marandas v. Bishop (In re Sassalos)*,

160 B.R. 646, 653 (D. Or. 1993) (noting that compromises are favored in bankruptcy).  Rule 9019(a)

of the Bankruptcy Rules ("Rule 9019(a)") provides in relevant part that "[o]n motion by the trustee

and after notice and hearing, the court may approve a compromise or settlement."  Rule 9019(a)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

commits the approval or denial of a settlement to the sound discretion of the bankruptcy court. *See In re Stein,* 236 B.R. 34, 37 (D. Or. 1999). The bankruptcy court, however, should not substitute its own judgment for the judgment of a trustee or a debtor. *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate. *See A & C Props.*, 784 F.2d at 1381. The court is neither required to conduct a mini-trial on the merits of the settlement, *Port O'Call Invest. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976), nor determine that the settlement amount is the amount that would have been paid had the matter been tried. The court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)); In re *Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N. D. Cal. 2004); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).

The U.S. Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968), that in order to approve a proposed settlement under the then-extant Bankruptcy Act, a court must have found that the settlement was "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." The Ninth Circuit Court of Appeals has reiterated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises (collectively, the "**Woodson Factors**"). *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380). It is not necessary that the conclusions reached in the consideration of each of the factors support the settlement, but taken as a

DOCS_LA:310622.1 59935/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  whole, those conclusions must favor the approval of the settlement. *See Pacific Gas*, 304 B.R. at

2  417 (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

3  **B.    The Settlement Agreement Satisfies the Rule 9019 Standard**

4           As discussed below, the Trustee believes the conclusion that must be drawn from

5  consideration of the factors used in *A & C Props* and Woodson support Court approval of the

6  Settlement Agreement.

7           1.    Probability of Success / Complexity of Litigation

8           The Trustee believes the Estate has viable claims against the Gugasians and that there is a

9  good likelihood of success in the Gugasian Adversary Proceedings.  However, the Gugasians have

10  challenged the Trustee's solvency analysis which may raise complex forensic accounting issues.

11  Further, the Gugasians have asserted fact intensive defenses, the validity of which will require the

12  Estate to conduct significant additional discovery.  The outcome of that discovery may affect the

13  Trustee's analysis concerning the probable outcome of litigation.

14           To take the Gugasian Adversary Proceedings to trial will involve additional months of legal

15  work, discovery, including of experts, the incurrence of hundreds of thousands of additional legal

16  fees and costs[6], and will delay the closing of this case particularly to the extent any judgments

17  obtained against the Gugasians are appealed.  If the Gugasians successfully defended against all of

18  the Trustee's Alleged Fraudulent Transfers, the Estate would be left with no recovery on account of

19  these claims.  Pursuing the Settlement Agreement ensures that the Estate will receive a sum certain

20  and that the Levon Claims and any other potential claims against the Estate by the Gugasians are

21  waived and dismissed.

22           The Trustee recognizes that, as in any litigation, there are risks in the Gugasian Adversary

23  Proceedings and believes that the Settlement Agreement provides the best likelihood that the Estate

24  will recovery on its claims and achieve a final resolution of its disputes with the Gugasians in an

25  efficient and timely manner.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[6] The Gugasians have estimated the incurrence of $200,000 to $300,000 in professional fees to try these cases.  The Trustee's professionals have estimated fees in the range of $100,000 to $200,000.

11

2.      Difficulties With Collection

The Trustee is not aware of any facts to indicate uncollectibility of judgment(s) obtained in favor of the Estate in the Gugasian Adversary Proceedings.  However, the Trustee believes that the Gugasians would likely appeal any judgment(s) of the Bankruptcy Court in favor of the Estate, increasing the costs of litigation and delaying any recovery to the Estate.

3.      Interests of Creditors

The Settlement Agreement will allow the Trustee to complete the administration of this Estate in a timely manner and make final distributions in partial payment of administrative claims.  The victim/creditors of the Estate who did not "opt-out", received Error Coins valued at approximately 18.75% of their claims in partial satisfaction of those claims.  There are insufficient Estate assets to make further distributions to victim/creditors and insufficient assets to pay administrative claimants in full.  The Settlement will allow the Trustee and her professionals to halt the incurrence of additional fees and expenses in connection with the Gugasian Adversary Proceedings and allow a greater (but not 100%) distribution on account of administrative claims, subject to court approval of those claims.

Based upon the foregoing, the Trustee submits that the Settlement Agreement satisfies the test for approval of a settlement and should be approved by this Court.

**C.      Adequate Notice of the Motion Has Been Given**

Notice of the filing of this Motion has been given to all parties entitled to notice in accordance with Bankruptcy Rule 2002(a) and to all parties requesting electronic notice.  Accordingly, adequate notice has been given.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

## VI.

### CONCLUSION

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order (i) approving the Settlement Agreement, (ii) authorizing the Parties to enter into and take any and all actions reasonably necessary to effectuate the Settlement Agreement, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: November 21, 2017                    PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ Linda F. Cantor*
        Linda F. Cantor
        James Hunter

Attorneys for Weneta M.A. Kosmala, Chapter 7 Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1

## EXHIBIT A

2

**(Kosmala Declaration)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# DECLARATION OF WENETA M. A. KOSMALA

I, Weneta M.A. Kosmala, do hereby declare as follows:

1.      I am the duly appointed chapter 7 trustee (the "Trustee") in the above-captioned bankruptcy case (the "Case"). Unless otherwise indicated, I make this Declaration on facts within my personal knowledge (albeit my own or that gathered by professionals rendering services to me), or as a result of having reviewed the court file in this Case. If called upon, I can and will competently testify to the facts stated herein.

2.      I make this declaration in support of the *Motion For Order Approving Chapter 7 Trustee's Settlement With Armen Haig Gugasian And Levon Gugasian* (the "Motion"). All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Motion.

## A.      Background of Debtor

3.      The Debtor was in the business of selling and purchasing gold, silver, coins, bullion, and other precious metals through its internet website or by phone. Prior to the filing of this Case, customer complaints concerning delayed or undelivered orders were increasingly made to the Better Business Bureau against the Debtor. In early March 2014, a class action lawsuit was filed against the Debtor and its president and sole shareholder, Hannes Tulving, in the United States District Court for the Northern District of California.

4.      The Debtor ceased operations on or about March 3, 2014. Shortly before the commencement of its bankruptcy proceedings on March 10, 2014, the Secret Service and the Department of Justice raided the Debtor's business offices, and seized the Debtor's computers, documents and valuable coins as part of an ongoing criminal investigation. Hannes eventually agreed to enter into a plea agreement with the Government in which he pled guilty to one count of 18 U.S.C. § 1343 wire fraud charge as set forth in Count One of a Bill of Information in the Criminal Case and, among other things, agreed to pay restitution to the victims of fraud. Hannes is currently serving a 30 month sentence at the federal prison in Butner, North Carolina.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**B.    Procedural Posture of the Bankruptcy Case**

5.    On March 18, 2014, the United States Trustee filed a Stipulation Appointing Chapter 11 Trustee [Docket No. 15], which was signed by both the Debtor and its attorney.  The Stipulation was approved by the Bankruptcy Court on March 18, 2014 [Docket No. 16] and an Order was entered by the Court on March 21, 2014 approving the UST's Application for the Appointment of a Chapter 11 Trustee, appointing R. Todd Neilson as Trustee of the Debtor's estate [Docket No. 22]. Thereafter upon notice and hearing, the case was converted to a chapter 7 and R. Todd Neilson was appointed as the chapter 7 Trustee [Docket 108].

6.    On March 22, 2016, Mr. Neilson filed his Withdrawal of Trustee [Docket 564].  The UST filed its Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as Trustee dated April 1, 2016 [Docket 566], appointing me as the chapter 7 trustee of the Debtor's estate.

**C.    Claims against the Gugasians**

**Levon Gugasian - Alleged Fraudulent Transfers**

Lease Transfers/Compensation/Repairs

7.    Upon information and belief, Levon leased three different parcels of real property to the Debtor.  Two, located at 2110 ½ and 2112 ½ W. Ocean Front, Newport Beach, were for adjoining residential properties.  The third, located at 750 W. 17th Street, Unit A, was for commercial property which constituted Debtor's principal place of business.

8.    Upon information and belief, the original leases of all three properties, entered into in 2006 for the Ocean Front Properties and 2008 for 17th Street, were at fair market rates which had escalated as of January 1, 2011 to $16,500 per month for each of the Ocean Front Properties and $13,230 per month for the 17th Street Property -- or a collective monthly rental of $46,230.

9.    Upon information and belief, for the years 2006 through 2010, Debtor and Hannes treated all of the rent paid by Debtor with respect to the Original 2110 ½ W. Ocean Front Lease and fifty percent (50%) of the rent paid by Debtor with respect to the original 2112 ½ W. Ocean Front Lease (the unit in which Hannes resided) as constituting compensation of Hannes by Debtor which

DOCS_LA:310622.1 59935/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Hannes was required to, and did, recognize as income for which Hannes was liable to pay income

2    taxes to both The Internal Revenue Service and the California Franchise Tax Board.

3        10.    Upon information and belief, on or about January 1, 2011, Levon and Debtor entered

4    into new leases for the Ocean Front and 17th Street Properties which replaced the original leases and

5    reallocated the rents among the three leased premises to substantially increase the rent for 17th Street

6    (i.e., for January, 2011, the monthly rent was increased from $13,230 to $30,000 and substantially

7    decreased the rents for 2110 ½ W. Ocean Front (i.e., for January, 2011, the monthly rent were

8    decreased from $16,500 to $4,500) and 2112 ½ Ocean Front (i.e., for January, 2011, the monthly

9    rent was decreased from $16,500 to $5,800).

10        11.    Upon information and belief , the rents specified in the Replacement Leases did not

11    reflect, and were not understood or intended by either Debtor or Levon to reflect, the respective fair

12    market rents of the three leased premises, but rather that the Replacement Leases were entered into

13    as part of a plan on the part of Debtor, of which I am informed and believe Levon was cognizant, to

14    defraud two of its creditors, the IRS and CFTB, by artificially and fraudulently reallocating the

15    rental obligations to (1) decrease the rents for 2110 ½ W. Ocean Front and 2112 ½ W. Ocean Front,

16    which Hannes was required to recognize as income/distributions for which Hannes was liable to pay

17    income taxes to the IRS and CFTB, below the fair market rents of those premises, and (2) increase

18    the rent for 17th Street which Hannes was not required to recognize as income/distributions for which

19    Hannes was liable to pay income taxes to the IRS and CFTB, above the fair market rent of those

20    premises.  Thus, whereas Hannes would have been required to recognize as income for which

21    Hannes was liable to pay income taxes to the IRS and CFTB the sum of $24,750 of the rents due for

22    January 2011 pursuant to the original 2110 ½ W. Ocean Front Lease and the original 2112 ½ W.

23    Ocean Front Lease.  Hannes only recognized as income for which Hannes was liable to pay income

24    taxes to the IRS and CFTB the sum of $7,400 of rents due for January 2011 pursuant to the

25    Replacement Leases for the Ocean Front Properties. These lease modifications reduced the income

26    that Hannes would have recognized for January 2011 by $17,350 and an amount which the Trustee

27    is informed and believes, and based thereon alleges, exceeded $200,000 for the entirety of 2011.

28

3

12.     The Levon Adversary Proceeding seeks to avoid and recover[1] all of the payments made by the Debtor after January 1, 2011 on the Replacement Leases, or a total of $259,500 for the Ocean Front Properties and $971,200 for 17th Street for a combined total of $1,230,700 as intentionally fraudulent transfers [2].

13.     Upon information and belief, within the four years preceding the Petition Date, Debtor made a series of payments to or for the benefit of Levon for (a) consulting services which were never provided in the gross amount of $225,000 ($142,216.02 net of taxes), and (b) for rent, repair or maintenance of premises located at 740 W. 16th Street, Costa Mesa, CA amounting to $454,067.88, for which the Debtor received no benefit.  The Levon Adversary Proceeding seeks to avoid and recover the consulting fees and foregoing payments and the payments for rent under the Replacement 750 W. 17th Street, Unit A Lease, as constructively fraudulent transfers. [3]

**Armen Gugasian - Alleged Fraudulent Transfers**

Consulting Fee Transfers

14.     Upon information and belief, within the four years preceding the Petition Date, the Debtor made a series of payments to or for the benefit of Armen as purported compensation for consulting services provided by Armen when, in reality, no such services or anything else of value was given to Debtor in return.  The Armen Adversary Proceeding seeks to avoid those payment as constructively fraudulent prepetition transfers under 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Cal.Civ.Code Sections 3439.04(a)(2), 3439.05 and 3439.07 and recover such transfers, or their value, under 11 U.S.C. §§ 544(b), 548 and 550 and Cal.Civ.Code Sections 3439.07 and 3439.08. The gross payments totaled $225,000; after taxes, Levon received $145,095.74.

**D.     The Gugasians' Contentions**

15.     The Gugasians dispute the allegations made in the Gugasian Adversary Proceedings. The Gugasians assert there is no evidence demonstrating actual fraudulent transfers on the part of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1] Recovery of the transfers is sought under 11 U.S.C. §§ 544(b), 548 and 550 and Cal.Civ.Code Sections 3439.07 and 3439.08.
[2] Avoidance is sought under 11 U.S.C. §§ 544(b) and 548(a)(1)(A) and Cal Civ Code Sections 3439.04(a)(1) and 3439.07 as intentionally fraudulent pre-petition transfers.
[3] Avoidance is sought under 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Cal.Civ.Code Sections 3439.04(a)(2), 3439.05 and 3439.07 as constructively fraudulent pre-petition transfers.

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Gugasians and that, to the extent the Debtor engaged in actual fraudulent transfers, the Gugasians

2  had no knowledge and derived no benefit from any intentional fraudulent transfers by the Debtor.

3  With respect to the constructively fraudulent transfers, the Gugasians allege that the Trustee has

4  failed to demonstrate that the Debtor was insolvent during the four years that the transfers were

5  made and that, at most, Debtor remained solvent at least until the end of 2012.  Further, the

6  Gugasians assert that there was reasonably equivalent value given for all of the transfers and / or that

7  the transfers were on account of an antecedent debt.

8      16.    The Gugasians also dispute the allegations that no value was provided to the Debtor

9  for their consulting services and for the rent, repair or maintenance of premises located at 740 W.

10  16th Street, Costa Mesa, CA.  The Gugasians assert that the consulting services and payments made

11  relating to the 16th Street property were pursuant to an agreement between the Gugasians and the

12  Debtor to enter into a new business venture for minting silver coins that was to be owned 60% by the

13  Debtor and 40% by Levon Gugasian.  Relating to that agreement, the Gugasians assert that they

14  agreed to provide funding in the amount of $2 million to purchase the silver and equipment to be

15  used in the mining process.  The Gugasians assert that they dedicated extensive time and resources

16  to build the silver minting business with the Debtor but were ultimately forced by market constraints

17  to stop moving forward with this venture.

18      17.    The Gugasians have also asserted that the Debtor and its creditors benefitted from the

19  reallocation of rents on the properties that were leased to the Debtor and that they received rental

20  payments in good faith and, in return, gave value to the Debtor by way of the leased premises and

21  accommodations respecting same.  They contest the objections to Levon's Claims and allege that

22  their lease rejection claims represent actual damages (as the leases were not below market).

23  **E.    Mediation**

24      18.    On November 3, 2017, the Trustee, Levon Gugasian and Armen Haig Gugasian

25  participated in mediation with the Honorable Mitchel R. Goldberg, Retired, as mediator.[4]  Through

26  mediation, the Parties reached a settlement which is memorialized in the Settlement Agreement.

27

28  [4] The parties had previously attempted to resolve their disputes through mediation held on August 10, 2016, however, no
    resolution was achieved at that time.

5

**F.    The Settlement Agreement**

19.    The following is a summary of the terms and conditions of the Settlement Agreement, qualified in its entirety by the actual provisions of the Settlement Agreement itself, a true and correct copy of which is appended hereto as **Exhibit 1**:

1.    Settlement Payment.  The Gugasians shall pay the sum of $648,250.00 to the Trustee on or before 10 days after all parties have executed the Settlement Agreement.  The Trustee will segregate the Settlement Payment from all other funds, shall deposit the Settlement Payment into a separate account, and shall not transfer the Settlement Payment into the Trustee's general operating account for the Estate until the fifteenth day after entry of a Bankruptcy Court order by approving the Settlement Agreement (the "Effective Date").  If the Settlement Agreement is not approved by an order of the Bankruptcy Court within 60 days after execution of the Settlement Agreement by all of the parties, then the Trustee will immediately return the Settlement Payment to the Gugasians and the Settlement Agreement shall be deemed of no force and effect, and the Gugasian Adversary Proceedings shall proceed as if the Settlement Agreement had never been entered into except insofar any additional extensions of time and deadlines are deemed necessary and/or appropriate.

2.    Allocation of Settlement Payment.  The Settlement Payment shall be allocated between Levon and Armen as follows:  Armen shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Armen as a Form W-2 employee of the Debtor.  Levon shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Levon as a Form W-2 employee of the Debtor, plus the sum of $198,250 to repay rent for the property located at 750 West 17th Street, Costa Mesa, California, that the Debtor paid to Levon as a landlord of the Debtor.

3.    Bankruptcy Court Approval Required.   Within 10 days after the execution of the Settlement Agreement by all of the Parties, the Trustee shall file a motion for an order approving the Settlement Agreement with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

4.    Release and Waiver of Gugasians' Claims and Withdrawal of Levon's Claims.  As of the Effective Date of the Settlement Agreement, the Gugasians will release and waive all claims that

6

1    the Gugasians, or either of them, have filed or could assert against the Estate, including but not

2    limited to Levon's Claims.  Within 10 days after the Effective Date of the Settlement Agreement,

3    Levon shall file with the Court Notices of Withdrawal of each and all of Levon's Claims.

4        5.    <u>Release and Waiver of Trustee's Claims and Dismissal of Gugasian Adversary</u>

5    <u>Proceedings</u>.  As of the Effective Date of the Settlement Agreement, the Trustee will release and

6    waive all claims and claims for relief that the Trustee has filed or could assert against either or both

7    of the Gugasians, including but not limited to the claims for relief asserted in the Gugasian

8    Adversary Proceedings.  Within 10 days after the Effective Date of the Settlement Agreement, the

9    Trustee shall file with the Bankruptcy Court stipulations requesting dismissal with prejudice of each

10    and both of the Gugasian Adversary Proceedings.

11        6.    <u>No Admission of Liability</u>.  The Settlement Agreement is executed by the Parties for

12    the sole purpose of settling and compromising the matters involved in the disputes that are discussed

13    therein, and it is expressly understood and agreed, as a condition thereof, that the Settlement

14    Agreement shall not constitute nor be construed to be an admission of the truth or correctness of any

15    claim, claim for relief, or defense asserted by any of the Parties hereto, or an admission of liability

16    by any person, firm, corporation, governmental unit, or other entity therein named or described.  In

17    addition, the Gugasians specifically disclaim any liability to, or wrongful acts against, the Debtor,

18    the Estate, the Trustee, and any other person or entity.

19        7.    <u>Mutual Releases</u>  For good and valuable consideration as provided in the Settlement

20    Agreement, save and except for the obligations owing pursuant to the Settlement Agreement, the

21    Parties knowingly, voluntarily, unconditionally, irrevocably, and absolutely release and discharge

22    each other from any and all claims, claims for relief, demands, economic damages, non-economic

23    damages, punitive damages, consequential damages, incidental damages, attorneys' fees, and/or any

24    and all damages, losses, liabilities, obligations, costs, expenses, actions, claims, claims for relief, or

25    causes of action, whether sounding in contract, tort, law, equity, or otherwise, relating to Levon's

26    Claims, the Gugasian Adversary Proceedings , and the claims for relief which are the subject of the

27    Gugasian Adversary Proceedings.

28

DOCS_LA:310622.1 59935/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8.    <u>Waiver of California Civil Code § 1542 and Similar Laws</u>.  The Parties, and each of them, understand and acknowledge that there are laws which may invalidate releases of claims which are unknown to the releasing party.  The Parties, and each of them, expressly acknowledge and agree that by the Settlement Agreement they are waiving and relinquishing any and all rights which they have or might have against any and all of the Parties they release pursuant to the Settlement Agreement, or any of them, under such laws, including but not limited to any and all rights afforded to each of them under California Civil Code § 1542.

**G.    The Agreement Satisfies the Rule 9019 Standard**

20.    As discussed below, in the exercise of my business judgment, I believe that the factors used by Courts to consider approval of settlements are met by the applicable facts herein.

<u>Probability of Success / Complexity of Litigation</u>

21.    I believe that the Estate has viable claims against the Gugasians and that there is a good likelihood of success in the Gugasian Adversary Proceedings.  However, the Gugasians have challenged my professionals' solvency analysis which may raise complex forensic accounting issues.  Further, the Gugasians have asserted fact intensive defenses, the validity of which will require the Estate to conduct significant additional discovery.  The outcome of that discovery may affect my analysis concerning the probable outcome of litigation.

22.    To take the Gugasian Adversary Proceedings to trial will involve additional months of legal work, discovery, including of experts, the incurrence of hundreds of thousands of additional legal fees and costs[5], and will delay the closing of this case particularly to the extent any judgments obtained against the Gugasians are appealed.  If the Gugasians successfully defended against all of the Trustee's Alleged Fraudulent Transfers, the Estate would be left with no recovery on account of these claims.  Pursuing the Settlement Agreement ensures that the Estate will receive a sum certain and that the Levon Claims and any other potential claims against the Estate by the Gugasians are waived and dismissed.

---

[5] The Gugasians have estimated the incurrence of $200,000 to $300,000 in professional fees to try these cases. The Trustee's professionals have estimated fees in the range of $100,000 to $200,000.

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

23.     I recognize that, as in any litigation, there are risks in the Gugasian Adversary Proceedings and I believe that the Settlement Agreement provides the best likelihood that the Estate will recovery on its claims and achieve a final resolution of its disputes with the Gugasians in an efficient and timely manner.

<u>Difficulties With Collection</u>

24.     I am not aware of any facts to indicate uncollectibility of judgment(s) obtained in favor of the Estate in the Gugasian Adversary Proceedings.  However, I believe that the Gugasians would likely appeal any judgment(s) of the Bankruptcy Court in favor of the Estate, increasing the costs of litigation and delaying any recovery to the Estate.

<u>Iinterests of Creditors</u>

25.     The Settlement Agreement will allow me to complete the administration of this Estate in a timely manner and make final distributions in partial payment of administrative claims.  The victim/creditors of the Estate who did not "opt-out" of the distribution, received Error Coins valued at approximately 18.75% of their claims in partial satisfaction of those claims.  There are insufficient Estate assets to make further distributions to victim/creditors and insufficient assets to pay administrative claimants in full.  Entry into the Settlement Agreement will allow my professionals and I to cease incurring additional fees and expenses in connection with the Gugasian Adversary Proceedings and allow a greater (but not 100%) distribution on account of administrative claims, subject to court approval of those claims.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

26.    Based upon the foregoing, I respectfully submit that the Settlement Agreement satisfies the test for approval of a ssettlement and should be approved by this Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21ˢᵗ day of November 2017, at Santa Ana, California.

Weneta M. A. Kosmala

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

DOCS_LA:310622.1 59935/002

1

## **EXHIBIT 1**

2

**(Settlement Agreement)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:310622.1 59935/002

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into, by and among Weneta M.A. Kosmala, Chapter 7 Trustee (the "Trustee"), solely in her capacity as the chapter 7 trustee for the bankruptcy estate of The Tulving Company, Inc. (the "Debtor"), on the one side, and Levon Gugasian ("Levon") and Armen Gugasian ("Armen" and, jointly with Levon, the "Gugasians"), on the other side, with reference to the following recitals. The Trustee and the Gugasians may be referred to in this Agreement individually as a "Party" or collectively as the "Parties."

## RECITALS

A.    On March 10. 2014, the Debtor commenced a bankruptcy case under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Central District of California (the "Court"), thereby initiating Bankruptcy Case No. 8:14-bk-11492-ES (the "Case") (Dkt. No. 1). On March 21, 2014, the Court entered an order appointing R. Todd Neilson as the chapter 11 trustee (the "Initial Trustee") of the Debtor's bankruptcy estate (the "Estate") (Dkt. No. 22). On May 29, 2014, the Court entered an order converting the Case to one under chapter 7 of the Bankruptcy Code (Dkt. No. 108), whereupon the Initial Trustee became the chapter 7 trustee of the Debtor's Estate. After the Initial Trustee withdrew (Dkt. No. 564), the Trustee was appointed as the successor trustee on April 1, 2016 (Dkt. No. 566).

B.    On September 25, 2014, Levon filed three separate proofs of claims, designated Claim Nos. 308, 309 and 310 (collectively, the "Proofs of Claims"), seeking lease rejection damages and pre-petition arrearages in the amounts of $650,025.15, $128,242.48 and $142,789.20, respectively, for three separate parcels of real property leased by Levon to Debtor. Also on September 25, 2014, Levon filed a Request for Payment of Administrative Expense in the amount of $79,200.00 (Dkt. No. 179) (the "Request") for post-petition rent for the same parcel of real property which is the subject of Proof of Claim 308. The Proofs of Claim and the Request are hereinafter referred to collectively as "Levon's Claims").

C.    On March 9, 2016, the Initial Trustee filed separate adversary proceedings in the Case against Armen and Levon, Adv. Proceeding Nos. 8:16-ap-01083-ES and 8:16-ap-01084-ES (jointly, the "Gugasian Adversary Proceedings"), respectively, seeking the avoidance and recovery of those transfers specified in the respective complaints (the "Alleged Fraudulent Transfers") and objecting to the Proofs of Claims. The Gugasians filed answers in the Gugasian Adversary Proceedings, denying any liability with respect to each and all of the Alleged Fraudulent Transfers, asserting the invalidity of each and all of the objections to the Proofs of Claims, and asserting affirmative defenses.

D.    The Parties dispute any and all actual or potential allegations, claims, claims for relief, and defenses of each other that are or that could have been set forth in the Case, Levon's Claims, and the Gugasian Adversary Proceedings. In addition, the

Parties contend that they have at all times conducted themselves lawfully and in accordance with all applicable laws, statutes, rules, and regulations.

E.    The Parties, while acknowledging that the matters addressed in this Agreement, Levon's Claims, and the Gugasian Adversary Proceedings are and remain disputed, nevertheless have made an economic decision to end all litigation between them. Accordingly, the Parties desire and have agreed to fully and finally resolve, settle, and release any and all issues, grievances, disputes, differences, controversies, claims, claims for relief, and defenses, that they have or might have with respect to the matters addressed herein, under the terms agreed to hereinbelow.

**NOW, THEREFORE**, in consideration of the promises and exchange of covenants and mutual obligations recited herein, and other good and valuable consideration provided, the receipt and sufficiency of which are hereby expressly acknowledged, the Parties agree as follows:

## AGREEMENT

1.    **Incorporation of Recitals.** The Recitals set forth above are hereby incorporated by reference into this Agreement.

2.    **Effective Date**. The "Effective Date" under this Agreement shall be defined as the day that is the 15th day after entry of an order by the Bankruptcy Court approving the Agreement (the "Approval Order").

3.    **Settlement Payment**. The Gugasians shall pay the sum of $648,250.00 (the "Settlement Payment") to the Trustee for the benefit of the Estate on or before 10 days after the execution of this Agreement by all of the Parties. The Trustee shall segregate the Settlement Payment from all other funds, shall deposit the Settlement Payment into a separate account, and shall not transfer the Settlement Payment into the Trustee's general operating account for the Estate until the Effective Date. If this Agreement is not approved by an order of the Bankruptcy Court within 60 days after execution of this Agreement by all of the Parties, then the Trustee shall immediately return the Settlement Payment to the Gugasians, the Agreement shall be deemed of no force and effect, and the Gugasian Adversary Proceedings shall proceed as if this Agreement had never been entered into except insofar any additional extensions of time and deadlines are deemed necessary and/or appropriate. The above-referenced 60-day deadline may be extended by mutual written agreement of the Parties.

4.    **Allocation of Settlement Payment**. The Settlement Payment shall be allocated between Levon and Armen as follows: Armen shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Armen as a Form W-2 employee of the Debtor. Levon shall pay to the Trustee for the benefit of the Estate the sum of $225,000 to repay salary the Debtor paid to Levon as a Form W-2 employee of the Debtor, plus the sum of $198,250 to repay rent for the property located

at 750 West 17th Street, Costa Mesa, California, that the Debtor paid to Levon as a landlord of the Debtor.

5. **Bankruptcy Court Approval Required**. The Parties acknowledge and agree that Court approval of this Agreement is a necessary condition precedent to its effectiveness and validity. Within 10 days after the execution of this Agreement by all the Parties, the Trustee shall file with the Bankruptcy Court a motion seeking an order approving this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("9019 Motion").

6. **Release and Waiver of Gugasians' Claims and Withdrawal of Levon's Claims**. As of the Effective Date of this Agreement, the Gugasians will hereby release and waive all claims that the Gugasians, or either of them, have filed or could assert against the Estate, including but not limited to Levon's Claims. Within 10 days after the Effective Date of this Agreement, Levon shall file with the Court Notices of Withdrawal of each and all of Levon's Claims.

7. **Release and Waiver of Trustee's Claims and Dismissal of Gugasian Adversary Proceedings**. As of the Effective Date of this Agreement, the Trustee will hereby release and waive all claims and claims for relief that the Trustee has filed or could assert against either or both of the Gugasians, including but not limited to the claims for relief asserted in the Gugasian Adversary Proceedings. Within 10 days after the Effective Date of this Agreement, the Trustee shall file with the Court stipulations requesting dismissal with prejudice of each and both of the Gugasian Adversary Proceedings.

8. **No Admission of Liability**. This Agreement is executed by the Parties for the sole purpose of settling and compromising the matters involved in the disputes that are discussed herein, and it is expressly understood and agreed, as a condition hereof, that this Agreement shall not constitute nor be construed to be an admission of the truth or correctness of any claim, claim for relief, or defense asserted by any of the Parties hereto, or an admission of liability by any person, firm, corporation, governmental unit, or other entity herein named or described. In addition, the Gugasians specifically disclaim any liability to, or wrongful acts against, the Debtor, the Estate, the Trustee, and any other person or entity.

9. **Mutual Releases**. For good and valuable consideration as provided in this Agreement, save and except for the obligations owing pursuant to this Agreement, the Parties knowingly, voluntarily, unconditionally, irrevocably, and absolutely release and discharge each other from any and all claims, claims for relief, demands, economic damages, non-economic damages, punitive damages, consequential damages, incidental damages, attorneys' fees, and/or any and all damages, losses, liabilities, obligations, costs, expenses, actions, claims, claims for relief, or causes of action, whether sounding in contract, tort, law, equity, or otherwise, relating to Levon's Claims, the Gugasian Adversary Proceedings, and the claims for relief which are the subject of the Gugasian Adversary Proceedings.

10.    **Waiver of California Civil Code § 1542 and Similar Laws**.  The Parties, and each of them, understand and acknowledge that there are laws which may invalidate releases of claims which are unknown to the releasing party.  The Parties, and each of them, expressly acknowledge and agree that they are hereby waiving and relinquishing any and all rights which they have or might have against any and all of the Parties they release pursuant to this Agreement, or any of them, under such laws, including but not limited to any and all rights afforded to each of them under California Civil Code § 1542.  That statute reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OF OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

In connection with such waiver and relinquishment, the Parties, and each of them, acknowledge that they are aware that they may later discover facts in addition to or different from those which they currently know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to hereby fully, finally, and forever release and waive all of the matters, claims, and claims for relief identified in the releases and waivers contained at paragraphs 6 and 7 of this Agreement, which now exist, may exist, or previously existed between them and any of the Parties they release pursuant to this Agreement, whether liquidated or unliquidated, known or unknown, matured or unmatured, foreseeable or unforseeable, suspected or unsuspected, or apparent or concealed.  In furtherance of such intent, the releases and waivers contained at paragraphs 6 and 7 of this Agreement shall be and remain in effect as full and complete releases, notwithstanding the discovery or existence of such additional or different facts by any of the parties or by any person acting on their respective behalves.

11.    **Authority of the Parties**.  As set forth herein, and expressly subject to the approval of the Court, each Party represents and warrants that he or she has full authority to enter into and perform this Agreement, that the execution and performance of this Agreement has been duly authorized by all requisite corporate action and/or actions, and that this Agreement shall be binding on the Parties and on their successors and assigns.

12.    **Representation By Counsel**.  Each of the Parties hereto acknowledges that he or she has been represented by, or has had the opportunity to be represented by, independent counsel of his or her own choosing throughout all negotiations and drafting that preceded the execution of this Agreement.

13.    **Successors and Assigns**.  This Agreement and all covenants and commitments set forth herein, including the releases set forth herein, shall be binding upon, extend to, and inure to the benefit of the Parties hereto and each of their legal successors, heirs, executors, administrators, assigns, grantees, transferees, partners, attorneys, accountants, and representatives.

14.    **Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the Bankruptcy Code and the State of California without regard to the conflict of law rules thereof.

15.    **Costs and Fees**.  Each Party shall bear his or her own attorney's fees and costs in connection with the negotiation, drafting, and Court approval this Agreement.

16.    **Cooperation**.  The Parties hereto mutually covenant and agree to execute any additional documents to affect the intent and purposes of this Agreement.

17.    **Litigation**.  In the event that any action is required to enforce, defend or construe any provision of this Agreement, or if any action is brought on any claim released hereby, the prevailing Party shall be entitled to recover all of his or her costs and expenses, including reasonable attorneys' fees, incurred in connection with such action(s).  Whether a Party is a prevailing party for purposes of this provision shall be determined by the court before which such action is brought.

18.    **Headings**. The captions and headings used in this Agreement are inserted for convenience and reference only and shall not be used in construing the provisions hereof.

19.    **Entire Agreement**.  Each Party represents and acknowledges that in executing this Agreement, he or she does not rely and has not relied on any representation or statement made by any other Party or by any other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement, except for representations set forth expressly in this Agreement.  This Agreement contains the entire understanding and complete agreement of the Parties with respect to the subject matter of this Agreement.  No amendment or modification of this Agreement shall be valid or binding upon the Parties hereto unless made in writing stating that such writing is by its express terms an amendment to this Agreement, and such writing is executed by each of the Parties.

20.    **Construction of Agreement**. This Agreement is the product of mutual negotiation, contribution, and drafting of the Parties and their respective attorneys, and the fact that one Party or the other, or its attorneys, drafted any particular provision or language shall not affect the interpretation thereof, and the terms of this Agreement shall not be construed more strictly against one Party than another Party.

21.    **Terms**.  The terms of this Agreement are contractual, not mere recitals; this Agreement is the result of negotiation between and among the Parties, each of whom has participated in the drafting hereof through such Party's respective counsel.

22.    **Execution**.  This Agreement has been carefully read, the contents thereof are known and understood, and it is signed freely by each Party executing this Agreement.

GUGASIANS Settlement Agreement                                          Page 5
DOCS_LA:310273.1 59935/002

23. **Jurisdiction**. Each of the Parties hereto agrees to recognize the exclusive jurisdiction of the United States Bankruptcy Court for the Central District of California to hear and resolve any dispute with respect to, or any claim that may arise out of or in connection with, this Agreement.

24. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one and the same original instrument binding upon all of the Parties hereto. The Parties' signatures may be exchanged or transmitted by facsimile, portable document format, email, and/or other electronic transmission, each of which shall be deemed an original signature.

**IN WITNESS WHEREOF**, this Agreement is hereby executed as of the date first written below by a duly authorized agent of each party.

Date: November ___17___, 2017

**CHAPTER 7 TRUSTEE**

By:_____
      Weneta M. A. Kosmala,
      Chapter 7 Trustee of the
      Bankruptcy Estate of The
      Tulving Company, Inc.

Date: November _____, 2017

**LEVON GUGASIAN**

_____

Date: November _____, 2017

**ARMEN GUGASIAN**

_____

23.    <u>Jurisdiction</u>. Each of the Parties hereto agrees to recognize the exclusive jurisdiction of the United States Bankruptcy Court for the Central District of California to hear and resolve any dispute with respect to, or any claim that may arise out of or in connection with, this Agreement.

24.    <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one and the same original instrument binding upon all of the Parties hereto. The Parties' signatures may be exchanged or transmitted by facsimile, portable document format, email, and/or other electronic transmission, each of which shall be deemed an original signature.

IN WITNESS WHEREOF, this Agreement is hereby executed as of the date first written below by a duly authorized agent of each party.

Date: November _____, 2017

**CHAPTER 7 TRUSTEE**

By:_____
     Weneta M. A. Kosmala,
     Chapter 7 Trustee of the
     Bankruptcy Estate of The
     Tulving Company, Inc.

Date: November 19, 2017

**LEVON GUGASIAN**

Date: November 19, 2017

**ARMEN GUGASIAN**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING CHAPTER 7 TRUSTEE'S SETTLEMENT WITH ARMEN HAIG GUGASIAN AND LEVON GUGASIAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF WENETA M. A. KOSMALA** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 21, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On **November 21, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method <u>for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 21, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*Via Federal Express*
The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 21, 2017 | Janice G. Washington | */s/Janice G. Washington* |
|---|---|---|
| Date | Printed Name | Signature |

DOCS_LA:310622.1 59935/002

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Wesley H Avery on behalf of Consumer Privacy Ombudsman Wesley H Avery
wavery@thebankruptcylawcenter.com,
lucy@averytrustee.com

Candice Bryner on behalf of Creditor Giuseppe Minuti
candice@brynerlaw.com

Candice Bryner on behalf of Interested Party Candice Bryner
candice@brynerlaw.com

Philip Burkhardt on behalf of Other Professional Karen Duddlesten
phil@burkhardtandlarson.com,
stacey@burkhardtandlarson.com

Stephen L Burton on behalf of Attorney Stephen L. Burton
steveburtonlaw@aol.com,
ellie.burtonlaw@gmail.com

Frank Cadigan on behalf of U.S. Trustee United States Trustee (SA)
frank.cadigan@usdoj.gov

Linda F Cantor, ESQ on behalf of Other Professional Pachulski Stang Ziehl & Jones LLP
lcantor@pszjlaw.com, lcantor@pszjlaw.com

Linda F Cantor, ESQ on behalf of Trustee Weneta M Kosmala (TR)
lcantor@pszjlaw.com, lcantor@pszjlaw.com

Roger F Friedman on behalf of Creditor Levon Gugasian
rfriedman@rutan.com

Roger F Friedman on behalf of Defendant Armen Haig Gugasian
rfriedman@rutan.com

Roger F Friedman on behalf of Defendant Levon Gugasian
rfriedman@rutan.com

Roger F Friedman on behalf of Interested Party Armen Haig Gugasian
rfriedman@rutan.com

David L Gibbs on behalf of Creditor Kenneth

W Stach
david.gibbs@gibbslaw.com,
ecf@gibbslaw.com

Nancy S Goldenberg on behalf of U.S. Trustee United States Trustee (SA)
nancy.goldenberg@usdoj.gov

Lawrence J Hilton on behalf of Creditor Jeffrey Roth
lhilton@onellp.com,
lthomas@onellp.com;info@onellp.com;evesc
ance@onellp.com;crodriguez@onellp.com;rw
enzel@onellp.com

James KT Hunter on behalf of Plaintiff R. TODD NEILSON
jhunter@pszjlaw.com

James KT Hunter on behalf of Plaintiff R. Todd Neilson
jhunter@pszjlaw.com

Robbin L Itkin on behalf of Mediator Robbin Itkin
ritkin@linerlaw.com, cbullock@linerlaw.com

John H Kim on behalf of Creditor Ford Motor Credit Company LLC
jkim@cookseylaw.com,
jhkim@ecf.courtdrive.com

Weneta M Kosmala (TR)
ecf.alert+Kosmala@titlexi.com,
wkosmala@txitrustee.com;dmf@txitrustee.co
m;kgeorge@kosmalalaw.com

Nanette D Sanders on behalf of Creditor Levon Gugasian
becky@ringstadlaw.com

Richard C Spencer on behalf of Interested Party Courtesy NEF
rspencer@rspencerlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**2.  <u>SERVED BY UNITED STATES MAIL</u>**

<u>Chapter 7 Trustee</u>
Weneta M.Λ. Kosmala
3 MacArthur Place
Suite 760
Santa Ana, California  92707

<u>Attorneys for Interested Parties</u>
<u>Levon Gugasian and Armen Gugasian</u>
Roger F. Friedman
Gerard M. Mooney
Rutan & Tucker
611 Anton Blvd., Suite 1400
Costa Mesa, CA  92626-1931

<u>Debtor</u>
The Tulving Company Inc
2049 Century Park East, Suite 2525
Los Angeles, CA  90067-3225

<u>Counsel for Debtor</u>
Andrew S Bisom
The Bisom Law Group
8001 Irvine Center Drive, Suite 1170
Irvine, CA 92618

James F. Wyatt, III
Wyatt & Blake, LLP
435 East Morehead Street
Charlotte, NC 28202

Laurence P Nokes on behalf of Interested
Party John Frankel
Nokes & Quinn
410 Broadway St Ste 200
Laguna Beach, CA 92651

Kevin Zolot
Assistant U.S. Attorney
United States Attorney's Office
Western District North Carolina
227 West Trade Street
Charlotte, NC 28202

Benjamin Bain-Creed
Assistant United States Attorney
Florida Bar #0021436
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202

Accountants for Landlord
Brent Murdoch
Murdoch & Morris, LLP
114 Pacifica, Ste. 320
Irvine, CA  92618

Interested Party
Frye & Hsieh
Douglas J Frye Esquire
24955 Pacific Coast Highway # A201
Malibu, CA 90265

Counsel for Creditor Levon Gugasian
Nanette D. Sanders, Esq.
Ringstad & Sanders LLP
2030 Main Street
Suite 1600
Irvine, CA  92614

Harlene Miller, Esq.
Harlene Miller Law
17910 Sky Park Circle, Suite 105
Irvine, CA 92614

On the Rocks Jewelry & Rare Coins
Attn:  David Halpin and Desirea Sloan
207 N. El Camino Real
San Clemente, CA 92672

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

DOCS_LA:310622.1 59935/002